**NAVCOM DEFENSE ELECTRONICS, INC., Plaintiff–Appellee,**

v.

**BALL CORPORATION, Defendant–Appellant.**

No. 94–56396.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1996.

Decided Aug. 8, 1996.

Donna K. McNamara, Kenneth B. Siegel and Milton L. Smith, Sherman & Howard L.L.C., Denver, Colorado, for defendant-appellant.

Michael D. Morin, Margolis & Morin, Los Angeles, California, for plaintiff-appellee.

Before BROWNING, WALLACE, and FARRIS, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's order granting summary judgment for NavCom and enjoining Ball from submitting its contract dispute with NavCom to arbitration. For the reasons set out below, we affirm the district court's denial of Ball's motion to dismiss, reverse the court's grant of summary judgment, vacate the order prohibiting arbitration, and remand for entry of an order consistent with this opinion.

## I.

The Air Force awarded NavCom a contract to produce a radar altimeter system. NavCom subcontracted with Ball to design and manufacture antennas to be used as part of the system. The Air Force required that the antennas meet certain pass/fail criteria, including the "MIL–STD–810" salt fog test. NavCom developed the NavCom Salt Fog Test Procedure to ensure that its antennas met Air Force specifications, and the Air Force approved the test. The subcontract required Ball's antennas to pass the NavCom Salt Fog Test.

Ball asserted that NavCom's test procedures were more rigorous than those required by the Air Force, but eventually performed the test according to NavCom's procedure. NavCom claimed that the antennas failed, while Ball insisted that the antennas passed the Air Force's criteria. NavCom directed Ball to redesign the antennas.

Ball asked NavCom to pay an equitable adjustment for redesign costs in the amount of $1,467,949. Ball claimed its prototype antenna could meet Air Force pass/fail criteria and failed only because of the more stringent NavCom testing procedure.[1] Ball also claimed NavCom required a redesign option that was more costly than other options.

The central question is whether the dispute between NavCom and Ball should have been submitted to an Air Force contracting officer or to arbitration. The Ball/NavCom contract required that the decision of a contracting officer about the prime contract would be binding on the two parties in disputes about the subcontract.[2] In the same paragraph the contract provided that any dispute not settled by agreement of the parties would be submitted to arbitration.[3]

NavCom informed Ball that it planned to submit a claim to the contracting officer as specified in the contract. The claim submitted by NavCom described the dispute between NavCom and Ball and then argued, ostensibly on behalf of Ball, that the Air Force should be liable for increased costs because the Air Force's pass/fail criteria

1. Specifically, Ball contended that the NavCom test configuration "perpetrated three errors: 1) it exposed the integral and mating connectors 2) to a far harsher test environment 3) at least three times as long as it should have" under the Air Force's MIL–STD–810 criteria.

2. "All Disputes between [NavCom] and [Ball] under this Purchase Order shall be resolved in the courts of competent jurisdiction provided, however, that if the face of this Purchase Order refers to a contract with the United States Government, then and in that event, any decision of the Contracting Officer under a Government prime contract, which relates to this Purchase Order shall be conclusive and binding upon [NavCom] and [Ball]."

3. "Any dispute arising under this Purchase Order which is not settled by agreement of the parties shall be subjected to arbitration in accordance with the rules of the American Arbitration Association, and judgment of the award rendered by the arbitrator(s) may be entered into any court having jurisdiction thereof."

were ambiguous.[4] Although Ball cooperated to at least some degree in drafting the claim (as required under the contract), Ball objected throughout the process to submission of the claim to the contracting officer. For instance, in a letter commenting on a draft version of the claim NavCom planned to submit, Ball wrote:

> Ball wishes to be on record that it has no claim against the Air Force and therefore does not endorse NavCom's statements in the draft letter that NavCom is "sponsoring" a claim "on behalf of Ball" pursuant to a "contractual obligation".... [I]f Ball was being sponsored, the effort was noticeably lacking in fervor; two, NavCom seems more intent on sidestepping or evading its liability to Ball by attempting to divert Ball's claims to the Air Force.

The Contracting Officer eventually denied the claim, finding that "Ball's argument that the MIL–STD–810 failure criteria are ambiguous is unfounded" and that the antennas had failed the test.

Just prior to the Contracting Officer's decision, Ball filed a demand for arbitration under the contract's arbitration provision. After initially participating, objecting to locale and choosing acceptable arbitrators, NavCom filed this suit in state court seeking to enjoin the arbitration. Ball removed the suit to federal court.

NavCom moved for a preliminary injunction prohibiting arbitration, and for partial summary judgment prohibiting arbitration and determining the subcontract required the disputed claim be resolved in the Court of Federal Claims where appeal of the contracting officer's decision was pending. Ball moved to dismiss for failure to state a claim.

The district court summarily granted NavCom's motion for a preliminary injunction and partial summary judgment and denied Ball's motion to dismiss. As clarified, the court's order enjoins Ball "from arbitrating any claim raised in its request for arbitration dated April 1, 1992, including, but not limited to, all claims or legal theories which refer or relate to Defendant's claim for an equitable adjustment in the amount of $1,467,949.00." The district court did not issue findings of fact or conclusions of law.

Ball appeals the district court's grant of summary judgment for NavCom, denial of Ball's motion to dismiss, and injunction prohibiting arbitration of Ball's claims, arguing that its claim against NavCom was not and could not be resolved by the contracting officer and that its dispute with NavCom was arbitrable under the contract.

## II.

▮▮ The Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 ("CDA"), provides the statutory framework for resolving disputes between government contractors and the government. Section 605(a) provides that "[a]ll claims by a contractor against the government relating to a contract ... shall be submitted to the contracting officer for a decision," and § 601(a)(4) defines a "contractor" as "a party to a Government contract other than the Government." Under the CDA, contracting officers have jurisdiction only over claims by *contractors* against the government, not over claims brought directly by subcontractors. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984)("hornbook rule" that subcontractors have no standing to enforce claims under CDA); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1548–49 (Fed.Cir. 1983); *Clean Giant, Inc. v. United States*, 19 Cl.Ct. 390, 392 (1990); *see also* Senate Report No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5235, 5250–51 (discussing exclusion of claims brought by subcontractors). A subcontractor may assert a claim against the

---

4. "The preceding factual section exhibits the ambiguity in the salt fog specification. The Air Force, NavCom and Ball's Engineering and Quality Control departments have arrived at conclusions with regard to the pass/fail criteria. In an effort to resolve the salt fog test issue, Ball submitted a redesign proposal which would satisfy the most strict interpretation of the salt fog specification. *Simply stated, since the Air Force drafted a specification which is apparently open to at least two interpretations, the Air Force is responsible for the costs associated with the redesign of the antenna since the original antenna was designed to and complied with an interpretation of that specification which Ball believed to be reasonable.*" (emphasis added).

government only by having the prime contractor "sponsor" and certify the subcontractor's claim. *Erickson Air Crane,* 731 F.2d at 813; *See* Federal Acquisition Regulation 44.203(c); Major John J. Thrasher, "Subcontractor Dispute Remedies: Asserting Subcontractor Disputes against the Federal Government," 23 Pub. Cont. L.J. 39, 82–99 (1993). The contracting officer has no jurisdiction to resolve disputes between a subcontractor and the prime contractor. *U.S. West Communications Servs. v. United States,* 940 F.2d 622, 627 (Fed.Cir.1991)("A government contractor's dispute with its subcontractor was by definition specifically excluded from CDA coverage.").

### III.

█ Whether Ball's claims could be submitted to the contracting officer depends upon whether they are claims against NavCom or against the Air Force. Ball has consistently alleged that NavCom, and not the Air Force, was responsible for the increased costs: Ball has contended that the NavCom Salt Fog Test procedure was too rigorous and the results were therefore invalid, and that the redesign of the antennas directed by NavCom was more expensive than other alternatives. These claims do not challenge Air Force conduct or suggest the Air Force was responsible for increased costs. They are claims by a subcontractor against a contractor, and the contracting officer therefore had no jurisdiction to resolve the dispute under the CDA.

NavCom's arguments to the contrary are unpersuasive. NavCom asserts that it did, in fact, submit Ball's claims to the contracting officer. However, Ball's allegations were neither presented to nor decided by the contracting officer. NavCom's claim did note that "[t]he language of MIL–STD–810 is overly restrictive," but Ball did not challenge the government's MIL–STD–810 pass/fail criteria but NavCom's test procedure. Nav-

Com argued only that Ball and NavCom had arrived at different and reasonable interpretations of the Air Force's test criteria, and that because the redesign costs stemmed from ambiguity in the criteria which was attributable to the Air Force, the Air Force should pay the equitable adjustment.[5] NavCom's claim that the pass/fail criteria were ambiguous simply did not address or include Ball's claims that NavCom's testing procedures were too rigorous or that NavCom demanded that Ball redesign the antenna in too costly a fashion. Nor did the contracting officer rule on Ball's claims; he found only that the "argument that the MIL–STD–810 failure criteria are ambiguous"—the theory advanced by NavCom, not Ball—was "unfounded."

Citing no authority, NavCom contends Ball's claims were claims against the government which NavCom could properly bring before the contracting officer if the claims could "be flowed up to the government so that ultimate financial responsibility will rest with that entity." This formulation begs the question it purports to answer—whether the claims allege government liability. In essence, NavCom contends that if it can transform Ball's claims into a claim against the government, no matter how distorted or unrelated to Ball's original claims, review by the contracting officer is Ball's sole avenue for relief and Ball is precluded from asserting its claims in any other forum. Neither the statute nor the contract contemplates that result.

NavCom points out that the subcontract provides that "if the face of this Purchase Order refers to a contract with the United States Government then ... any decision of the Contracting Officer under a Government prime contract, which relates to this Purchase Order shall be conclusive and binding," and argues that because the subcontract does refer to a government contract and the contracting officer's decision relates to the sub-

---

5. This argument may well have been a sound strategy for NavCom's attempt to hold the Air Force vicariously liable for Ball's extra costs. *See, e.g., United States v. Turner Constr. Co.,* 819

F.2d 283 (Fed.Cir.1987)(government liable for extra costs because contract provision was ambiguous).

contract, Ball is bound by that decision and barred from arbitrating its claims. This argument fails. The parties cannot by contract expand the contracting officer's jurisdiction beyond that granted by the CDA. As we have said, contracting officers have no jurisdiction over claims on disputes between the contractor and subcontractor.[6] Moreover, the contracting officer decided only whether the Air Force was liable; that determination cannot bind the parties on the question of whether NavCom is liable to Ball. The extent to which Ball may be bound by the contracting officer's holdings on the issues he did decide—that the MIL–STD–810 was not ambiguous and that the antennas failed the MIL–STD–810 requirements—and the impact the contracting officer's findings may have on Ball's claims, can be determined in arbitration.

NavCom argues that the Court can supply missing words in the contract to carry out the intent of the parties, *Heidlebaugh v. Miller*, 126 Cal.App.2d 35, 38, 271 P.2d 557 (1954), and submitted evidence that but for a drafting error, the arbitration clause would have provided that "[a]ny dispute arising under this Purchase Order *which is not covered by [the Contracting Officer provision]*, and which is not settled by agreement of the parties shall be decided by arbitration." This added language cuts against NavCom's position rather than supporting it—since the dispute between NavCom and Ball cannot be submitted to a contracting officer under the CDA, it is arbitrable under the contract. NavCom goes on to argue that the Court should give effect to the mutual intent of the parties, Cal. Civ. Code §§ 1636, and that the "main purpose" of the contract was to safeguard NavCom from inconsistent judgments. Even if NavCom had presented some evidence to support this theory, Ball could still arbitrate its claims against NavCom; were the arbitrator to find NavCom liable, there would be no inconsistency between findings that the Air Force is not liable but NavCom is because NavCom alone caused the additional costs.

We conclude that Ball's claims against NavCom are arbitrable under the contract.

### IV.

Although Ball did not move for summary judgment below, we grant summary judgment for Ball, reverse the district court's grant of summary judgment for NavCom and vacate its order enjoining arbitration. *See* 10 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2716 ("Summary judgment at the appellate level is proper even though the party who will prevail on the appeal did not move under Rule 56.")(citing *International Longshoremen's Assn., AFL–CIO v. Seatrain Lines, Inc.*, 326 F.2d 916, 921 n. 2 (2d Cir.1964)); *Id.* § 2720.[7]

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, and REMANDED for entry of judgment for Ball. NavCom shall bear the costs on appeal.

---

6. *See United States v. Miller–Stauch Constr. Co.*, 904 F.Supp. 1209, 1212 (D.Kan.1995)(subcontract that purports to require submission of disputes to a contracting officer does not expand officer's jurisdictional authority); *Riley Elec. Co. v. American Dist. Tel. Co.*, 715 F.Supp. 813, 816 (W.D.Ky.1989).

7. We decline, however, to treat Ball's Motion to Dismiss as a motion for summary judgment as requested. Ball's Motion to Dismiss was without merit and we affirm the denial of the motion.