*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAWAI WARDAK TRANSPORTATION
COMPANY,

        Plaintiff-Appellant,

v

RMA GROUP AFGHANISTAN LIMITED, RMA
GROUP CO LTD, RM ASIA HK LIMITED, and
RMA MIDDLE EAST FZE,

        Defendants-Appellees.

UNPUBLISHED
January 28, 2021

No. 350393
Oakland Circuit Court
LC No. 2018-166817-CB

Before: O'BRIEN, P.J., AND BECKERING AND CAMERON, JJ.

PER CURIAM.

Plaintiff, Nawai Wardak Transportation Company ("NWTC"), appeals the trial court's order granting summary disposition under MCR 2.116(C)(1) (lack of personal jurisdiction) in favor of defendants, RMA Group Afghanistan Limited ("RMA Afghanistan"), RMA Group Co Ltd, RM Asia HK Limited, and RMA Middle East FZE. We vacate the trial court's order dismissing NWTC's claims for lack of personal jurisdiction and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case concerns a subcontract for the supply of fuel to support United States government operations in Afghanistan. The United States Agency for International Development ("USAID") awarded a procurement contract to Aircraft Charter Solutions ("ACS"), a nonparty to this case and the prime contractor. Under the prime contract, ACS performed aircraft flight operations out of Kabul International Airport in Kabul, Afghanistan.

RMA Afghanistan, an Afghanistan-based company, provides government contracting services, including supplying fuel in Afghanistan. ACS awarded RMA Afghanistan a contract to supply fuel to locations throughout Afghanistan in support of ACS's prime contract with USAID. In July 2012, RMA Afghanistan entered into a subcontract with NWTC, which is also an Afghanistan-based company, to supply fuel in support of the prime government contract between

-1-

USAID and ACS. The subcontract provided that RMA Afghanistan was not obligated to pay NWTC for its services until RMA Afghanistan was paid by ACS. The subcontract incorporated several provisions of the United States Federal Acquisition Regulations ("FAR") and the United States Department of Defense FAR Supplement ("DFARS"). As relevant to this appeal, Section 11 of the parties' subcontract contained a forum-selection clause:

> 11.2 The parties irrevocably agree that the courts of the United States of America shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

After the subcontract was executed, NWTC's performance under the agreement took place entirely in Afghanistan. In 2013, the relationship between USAID and ACS ended, leading to ACS terminating its subcontract with RMA Afghanistan. Subsequently, RMA Afghanistan terminated its subcontract with NWTC. In July 2013, NWTC demanded payment for certain services that it had performed under the subcontract, but RMA Afghanistan refused to pay.

In January 2014, NWTC initiated proceedings in Afghanistan, and NWTC prevailed in the commercial court. The Kabul Provincial Court of Appeals upheld the commercial court's judgment. However, the Supreme Court of Afghanistan reversed, concluding that the parties agreed that the courts of the United States of America would have jurisdiction over the parties' claims under the subcontract. Thereafter, NWTC filed a complaint against defendants in Oakland Circuit Court. NWTC alleged breach of contract and fraud stemming from the subcontract. Although only RMA Afghanistan signed the subcontract, NWTC alleged that defendants were all liable because "[d]efendants are alter egos of a singular entity controlled by the same owners, directors, and executives."

In lieu of filing answers to the complaint, defendants filed a joint motion for summary disposition under MCR 2.116(C)(1), seeking dismissal for lack of personal jurisdiction. Defendants asserted that there was no basis for finding general or specific personal jurisdiction.[1] Defendants argued that the forum-selection clause in the subcontract only reflected that NWTC and RMA Afghanistan agreed to litigate claims arising from the subcontract in United States *federal* courts. Defendants argued that interpreting the contract to include any state court would render the forum-selection clause unreasonable, unjust, and unenforceable. NWTC opposed the motion, arguing that the forum-selection clause provided that disputes between the parties could be brought in any court in the United States, whether state or federal. NWTC also argued that the forum-selection clause satisfied all of MCL 600.745(2)'s requirements. NWTC further argued that defendants were judicially estopped from arguing that the forum-selection clause was unenforceable because RMA Afghanistan had successfully relied on the forum-selection clause in the litigation in Afghanistan and that the remaining defendants were bound by the forum-selection clause because they were alter egos of RMA Afghanistan. Defendants filed a reply brief, in

---

[1] NWTC and RMA Afghanistan are based in Afghanistan. The remaining defendants are incorporated in other countries, including China, Thailand, and the United Arab Emirates. As already stated, the subcontract was created in Afghanistan and activities related to it were performed in Afghanistan.

relevant part arguing that they were not estopped from arguing that the forum-selection clause was unenforceable given that RMA Afghanistan never argued that NWTC was unable to file claims in federal courts.

After hearing oral argument, the trial court dismissed NWTC's claims, concluding that personal jurisdiction did not exist based on the forum-selection clause. In doing so, the trial court concluded that NWTC and RMA Afghanistan only agreed to file claims arising from the subcontract in federal courts. The trial court also concluded that defendants were not judicially estopped from arguing lack of personal jurisdiction because defendants' argument before it was not inconsistent with RMA Afghanistan's position in the Afghanistan litigation. The trial court did not address NWTC's argument regarding alter egos. This appeal followed.

## II. STANDARDS OF REVIEW

"We review a trial court's decision regarding a motion for summary disposition de novo." *City of Fraser v Almeda Univ*, 314 Mich App 79, 85; 886 NW2d 730 (2016). Although the trial court granted summary disposition under MCR 2.116(C)(1), as noted in *Barshaw v Allegheny Performance Plastics, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 350279); slip op at 2-3,

> dismissal is appropriate under MCR 2.116(C)(7) when there is "an agreement to arbitrate or to litigate in a different forum." This Court has also stated that dismissal "on the basis of the existence of a valid forum-selection clause falls under MCR 2.116(C)(8), because pursuant to MCL 600.745(3), plaintiff's complaint fails to state a claim upon which the courts of this state are permitted to grant relief." *Robert A. Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 477 n 6; 760 NW2d 526 (2008).
>
> Furthermore, "a trial court's dismissal of an action pursuant to a contractual forum-selection clause is properly reviewed on appeal under a de novo standard." *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 345; 725 NW2d 684 (2006). To the extent our analysis requires the interpretation of contractual and statutory language, our review is also de novo. *Id.* ("The legal effect of a contractual clause is a question of law that we review de novo."); [*Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008)] ("The proper interpretation of statutes is also a question of law reviewed de novo on appeal."). [Footnote omitted.]

## III. ANALYSIS

NWTC argues that the trial court erred by granting summary disposition in defendants' favor.[2] NWTC argues that, by interpreting the forum-selection clause to exclude state courts, the

---

[2] As already stated, RMA Afghanistan is the only defendant that is a signatory to the subcontract with NWTC. However, NWTC argues that defendants are all bound by the forum-selection clause

trial court rendered the forum-selection clause nugatory because "there is no federal forum with subject-matter jurisdiction over this action." We agree.

"[D]ismissal based on a forum-selection clause necessarily requires interpretation and application of contractual language." *Barshaw*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). The goal of contract interpretation "is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *AFSCME v Detroit*, 267 Mich App 255, 262; 704 NW2d 712 (2005). The words of a contract "are interpreted according to their plain and ordinary meaning," and this Court "gives effect to every word, phrase, and clause" while avoiding "interpretations that would render any part of the document surplusage or nugatory[.]" *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). "Ultimately, we enforce clear and unambiguous language as written." *Id*. If a contract's language is clear, its construction is a question of law for the court. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997) (citations omitted). See also *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 474; 663 NW2d 447 (2003) (noting that "the jury can consider relevant extrinsic evidence as an aid in interpreting a contract whose language is ambiguous"). However, a contract is not ambiguous simply because the parties to the contract dispute its meaning. Rather, "[a] contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997).

In this case, the forum-selection clause provides as follows:

> The parties irrevocably agree that the courts of the United States of America shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

Thus, the forum-selection clause must be read to confer exclusive jurisdiction on "the courts *of* the United States of America" (emphasis added). The parties vehemently dispute the meaning of the word "of," which is not defined in the subcontract. It is therefore proper to consult a dictionary to ascertain the word's plain and ordinary meaning. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015). "Of" is defined as "a function word to indicate belonging or a possessive relationship[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, according to the dictionary definition, in order to be a court of the United States of America, the court must be possessed by the United States of America or the court must belong to the United States of America. It is axiomatic that, although state courts are located within the United States, they are not possessed by the federal government, and they do not belong to the federal

---

because they are alter egos. Although defendants deny that they are alter egos, the trial court did not reach this argument when deciding defendants' motion for summary disposition. For the reasons discussed later in this opinion, we will not reach the alter-ego argument either.

government. See e.g., Mich Const 1963, art 6, § 1. Accordingly, the dictionary definition of "of" supports that, while Michigan courts may be *in* the United States, they are not *of* the United States.

Although defendants stop short of arguing that the forum-selection clause is ambiguous, defendants argue that the plain language of the forum-selection clause *and* the circumstances surrounding the formation of the subcontract support that NWTC's claims had to be filed in a federal court. Indeed, the parties incorporated regulations from the FAR and the DFARS into their subcontract.[3] Defendants argue that, "[t]o enforce this 'law of the United States of America' that governs the Subcontract, the parties agreed to jurisdiction in 'the courts of the United States.' " Defendants further observe that all disputes arising out of federal contracts are resolved in federal courts or tribunals pursuant to the provisions of the Contract Disputes Act of 1978 ("CDA" or "the Act"), 41 USC 7101 *et seq.*

The CDA "is a comprehensive statutory scheme for resolving contractual conflicts between the United States and government contractors." *United Kingdom Ministry of Defence v Trimble Navigation Ltd*, 422 F3d 165, 166 (CA 4, 2005) (quotation marks and citation omitted). The CDA applies to any "express or implied contract" between a "contractor" and "an executive agency of the United States Government for the procurement of property, services, or construction." See *id.*, citing 41 USC 7102(a) (formerly 41 USC 602(a)). A "contractor," within the meaning of the CDA, is "a party to a Government contract other than the Government." *Winter v FloorPro, Inc*, 570 F3d 1367, 1369 (Fed Cir, 2009); 41 USC 7101(7). Subcontractors who contract with a government contractor but have no direct contractual relationship with an executive agency are not "contractors" within the statutory definition of that term and may not appeal or sue the executive agency directly. See *United States v Johnson Controls, Inc*, 713 F2d 1541, 1551 (Fed Cir, 1983); see also *Montano Elec Contractor v United States*, 114 Fed Cl 675, 680 (2014) ("The courts repeatedly have held that, as a general matter, subcontractors lack privity of contract with the federal government and thus cannot bring a claim under the CDA."); *Eastern, Inc v Shelley's of Delaware, Inc*, 721 F Supp 649, 651 (DNJ, 1989) ("It is plain that the provisions of the CDA do not apply to subcontractors.").[4] Because NWTC and RMA Afghanistan are subcontractors that have no direct contact with USAID—the federal executive agency that contracted with the prime

---

[3] The FAR and DFARS clauses incorporated by reference in the parties' subcontract pertain to the following: anti-human trafficking (FAR 52.222-5; DFARS 952.222-001); requirements, procedures, and incident reports for armed security forces (DFARS 952.225-001 and -002); personnel matters (FARS 52.228-4; DFARS 952.225-003, -009); restrictions on certain foreign purchases (FAR 52.225-13); transportation of supplies by sea (DFARS 252.257-7023); and compliance with laws and regulations (DFARS 952.225-004). In addition, in Clause 8 of the contract, NWTC agreed to abide by United States anti-corruption laws. None of these regulations are the subject of the current disputes. Furthermore, the subcontract incorporates none of the dispute provisions found in FAR 52.233-1.

[4] Exceptions to this general rule arise. See e.g., *Johnson Controls, Inc,* 713 F2d at 1551 (noting as an exception "situations in which privity results when prime contractors act as Government agents to place subcontracts.") However, defendants have not suggested that any such exception exists here. In fact, defendants' insistence that NWTC can bring a sponsored claim suggests the contrary.

-5-

contractor in this case—neither can bring a claim under the CDA to remedy any breach of the contract between them. See *Johnson Controls, Inc*, 713 F2d at 1551. Furthermore, federal courts are courts of limited jurisdiction. Foreign parties such as NWTC and RMA Afghanistan cannot confer subject-matter jurisdiction upon a federal court by merely agreeing to have their disputes resolved in such courts. *Corp of Ireland, Ltd v Compagnie des Bauxites de Guinee*, 456 US 694, 701-702 (1982).

Defendants concede that NWTC cannot file a claim in a federal court or file a direct claim under the CDA. Nevertheless, defendants maintain that the trial court's interpretation of the phrase "courts of the United States of America" to refer only to federal courts does not render the forum-selection clause nugatory because NWTC can file a "pass-through" claim. A pass-through, or sponsored, claim is one where a subcontractor, who lacks privity with the Government and therefore cannot sue directly, presents a claim to the prime contractor and requests that it be "passed through" or "sponsored" by the prime contractor to the government. See e.g., *Montano Elec Contractor*, 114 Fed Cl at 680 ("a subcontractor's claims may be brought against the government if the prime contractor brings the suit on behalf of the subcontractor—as a pass-through or sponsored claim"). Defendants contend that NWTC can lodge its claims up the supply chain to the prime contractor, who submits the claim to the government. If NWTC receives an adverse ruling from the contracting officer, it can then appeal in the agency board of appeals or the United States Court of Federal Claims. See 41 USC 7104.

However, contrary to defendants' arguments, a pass-through claim does not provide a means to resolve the parties' dispute because contracting officers[5] have no jurisdiction over disputes between subcontractors. See *United States v Miller-Stauch Constr Co*, 904 F Supp 1209, 1212 (D Kan, 1995) ("By its own plain terms, the CDA encompasses only claims or disputes in which the government is a party and makes no provision for disputes or claims between contractors."); *Riley Elec Co v Am Dist Tel Co*, 715 F Supp 813, 818 (WD Ky, 1989) (finding CDA inapplicable to dispute between two contractors because the Act "makes no mention of claims between contractors; it speaks only of claims between a contractor and the government"). Although questions remain regarding the extent to which a claim must be attributable to the government before a contracting officer can assert jurisdiction pursuant to the CDA,[6] it is undisputed that a pass-through claim is not the vehicle for resolving disputes between a general contractor and a subcontractor or, by extension, between two subcontractors. See *Performance Contracting, Inc v Seaboard Sur Co*, 163 F3d 366, 371 (CA 6, 1998) ("[I]t is a well-established proposition that a contracting officer has no jurisdiction to resolve disputes between a general

---

[5] "Contracting officer" "means an individual who, by appointment in accordance with applicable regulations, has the authority to make and administer contracts and to make determinations and findings with respect to contracts." The term also "includes an authorized representative of the contracting officer, acting within the limits of the representative's authority." 41 USC 7101(6).

[6] Some courts look to see if the government was directly affected, others suggest that a subcontractor must either challenge government conduct or allege that the government was responsible for increased costs, and still others have implied that the government must be a party to the dispute before a claim can be brought before a contracting officer. *Performance Contracting, Inc,* 163 F3d 366, 371 n 4 (CA 6, 1998) (listing cases).

contractor and a subcontractor."); *NavCom Def Elecs, Inc v Ball Corp*, 92 F3d 877, 879-81 (CA 9, 1996) (rejecting argument that subcontractor's claim against prime contractor should have been submitted to a contracting officer under the CDA, reasoning in part that subcontractor's claim was not against the government).

NWTC's claims against defendants are for breach of contract and fraud. NWTC bases the former on allegations that RMA Afghanistan refused to pay for services already rendered, and the latter on assertions that NWTC suffered substantial damages arising from reliance on the intentional misrepresentations of RMA Afghanistan's agents. NWTC claims that RMA Afghanistan's actions are attributable to all defendants because they are alter egos. Consequently, NWTC's allegations attest to a contract dispute between two subcontractors, which is a type of dispute over which contracting officers have no jurisdiction. See *Performance Contracting, Inc*, 163 F3d at 371; *NavCom Def Elecs, Inc*, 92 F3d at 879-81. Because these allegations do not implicate the federal contracting agency, there is nothing to pass through. See *NavCom Def Elecs, Inc*, 92 F3d at 879-81.

Defendants suggest that it is illogical that the parties would have agreed to adjudicate claims arising from a federal procurement contract governed by federal law in anything other than a federal court. However, it seems equally illogical that the parties would have intended to leave themselves no forum in which to seek a remedy should either party breach the subcontract between them. We are not constrained to follow dictionary definitions when interpreting a contract, *Epps*, 498 Mich at 529, and the effect of interpreting the forum-selection clause to refer exclusively to federal courts is to deprive both parties of a forum in which to resolve their contract disputes. In other words, for either party to have had a legal remedy for the other party's failure to perform under the subcontract, the parties must have intended "courts of the United States of America" as a geographical designation encompassing both federal and state courts. Any other reading of the forum-selection clause would render it nugatory, which is to be avoided when interpreting contracts. See *Tuscany Grove Ass'n*, 311 Mich App at 393.

Our analysis does not end there, however, because defendants argue that interpreting the forum-selection clause to include state courts "would render the clause meaningless and unenforceable." Specifically, defendants argue that interpreting the forum-selection clause to include *any* state court would render the clause "overbroad and so lacking in specificity" that "enforcing it would be unreasonable and unjust." Defendants also argue that interpreting the clause to include all state courts would demonstrate that the parties failed to reach a meeting of the minds as to where actions could be brought given that the purpose of forum-selection clauses is to provide "predictability and certainty." Defendants further argue that "the forum selection clause in the Subcontract does not meet [MCL 600.745's] requirements for consent to jurisdiction in this state." Although defendants argued before the trial court that interpreting the forum-selection clause to include all state courts would render the clause unenforceable, the trial court did not need to consider this argument because it concluded that the phrase "courts of the United States of America" only included federal courts. After reviewing the record, we conclude that defendants' argument was not fully developed and that it is therefore appropriate for the trial court to address

-7-

the issue.[7]  Therefore, it is necessary to vacate the trial court's order of dismissal and remand to the trial court so that it can consider whether the forum-selection clause is enforceable.

In so holding, we acknowledge and reject NWTC's argument that defendants are judicially estopped from arguing that the forum-selection clause is void or unenforceable. "Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citations omitted). The doctrine is invoked "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id*. at 479-480 (quotation marks and citations omitted). The judicial estoppel doctrine must be "applied with caution" and serves to prevent litigants from deliberate manipulation of the courts by arguing opposing positions "to suit an exigency of the moment." *Oplan v Kiesgan*, 234 Mich App 352, 363-364; 594 NW2d 505 (1999) (quotation marks and citations omitted). Furthermore, "[j]udicial estoppel is an extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Id*. at 364 (quotation marks and citations omitted; second alteration in original).

In the Afghanistan litigation, RMA Afghanistan argued that the judgment of the commercial court should be reversed because the forum-selection clause required the dispute to be heard in the United States. The Supreme Court of Afghanistan accepted RMA Afghanistan's argument and concluded that the parties agreed "that the courts of the United States of America have jurisdiction over the disputes and claims arising out of or in connection with the contract (including non-contractual claims and disputes)." Defendants' position before the trial court and this Court does not contradict the position that RMA Afghanistan took before the Supreme Court of Afghanistan. Specifically, defendants argue that the forum-selection clause only confers jurisdiction on the "courts of the United States of America," i.e., federal courts. Because this is not inconsistent with RMA Afghanistan's position before the Supreme Court of Afghanistan, defendants are not judicially estopped from asserting such a position.

Finally, NWTC notes that the trial court "made no ruling on the alter-ego status of Defendants." Accordingly, NWTC indicates that "[t]here is thus no need for this [C]ourt to opine

---

[7] NWTC alleges that Kevin Walker Whitcraft is an "owner, executive officer, and/or director" of all defendant entities and is "the President of Oakland County resident Global Fleet Sales, LLC" ("GFS"), *which is not a party to this litigation*. According to NWTC, Whitcraft is a United States citizen who resides in Thailand. NWTC also alleges that "GFS is a subsidiary and the 'automotive division of RMA Group' " and that "GFS is a limited liability company incorporated in Delaware with its principal offices in Oakland County[.]" NWTC further alleges that "GFS acts as the sole RMA presence in the United States." According to NWTC, "many" of the defendants in this action have "already affirmatively invoked the jurisdiction of Michigan courts by pursuing at least one other lawsuit in Michigan." However, defendants deny that any of the parties to this ligation conduct business in Michigan. Defendants also deny that GFS carries on business for defendants in Michigan or that there is any factual basis to impute GFS's presence in Michigan to any defendant.

on the matter in the first instance." Defendants agree, and so do we. Consequently, we will not consider whether defendants are alter egos.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Thomas C. Cameron