**James E. WALLER, Plaintiff–Appellant,**

v.

**SOUTHERN ILLINOIS UNIVERSITY, et al., Defendants–Appellees.**

No. 97–1363.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 7, 1997.

Decided Sept. 9, 1997.

James E. Waller (submitted on briefs), Fayetteville, TN, for Plaintiff–Appellant.

Shari R. Rhode, Southern Illinois University, Carbondale, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

The plaintiff flunked out of Southern Illinois University's law school, and upon being denied readmission filed this suit against the university (a public institution) and some of its employees under 42 U.S.C. § 1983. The district court dismissed the suit for failure to state a claim, and the plaintiff appeals. Only one of the claims that he presents has sufficient merit to warrant discussion. It is that Standard 505 of the American Bar Association's "Standards for Approval of Law Schools" (Oct. 1994) gave him a property right enforceable under the Fourteenth Amendment to be considered for readmission of which the university deprived him. This accreditation standard provides that a student who has flunked out of law school may be readmitted if he shows that he's able to do the work and (redundantly) if the circumstances of his having flunked out don't show the contrary. The university refused to consider readmitting the plaintiff because a rule of its law school forbids the readmission of a student who flunked out with a grade point average below a certain level and the plaintiff's average was below that level.

The relation between a law school and its students is contractual, and the rights that

the contract confers on the student have considerable value. In consequence, we may assume, without having to decide, that a public law school which breaks its contract to admit or readmit a student deprives the student of "property" within the meaning that this word has come to bear in the due process clauses of the Fifth and Fourteenth Amendments to the Constitution. A number of other decisions, including our own *Martin v. Helstad,* 699 F.2d 387, 390 (7th Cir.1983), make the same assumption, but none has had occasion actually to decide the question. *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *Board of Curators v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 952–53, 55 L.Ed.2d 124 (1978); *Davis v. Mann,* 882 F.2d 967, 973 (5th Cir.1989); *Nash v. Auburn University,* 812 F.2d 655, 660 (11th Cir.1987); *Haberle v. University of Alabama,* 803 F.2d 1536, 1539 n. 1 (11th Cir.1986); *Mauriello v. University of Medicine & Dentistry,* 781 F.2d 46, 52 (3d Cir. 1986); *Harris v. Blake,* 798 F.2d 419, 422 (10th Cir.1986). The contractual right claimed here, however, is not a right to admission or readmission; it is merely a right to be *considered* for readmission; and it may be doubted whether that right has sufficient value or definiteness to come within the concept of constitutional property. But as the issue is not discussed by the parties and there is no case on the question, we shall assume for the sake of argument that even so nebulous and etiolated an "entitlement" can be thought of as property.

At first glance it might seem utterly preposterous to suppose that a rule of the American Bar Association, a private association, is a form of state action and therefore a possible source of constitutional property. Even if a public institution, in order to be accredited by the ABA, promises to adhere to the standards for accreditation that the ABA has laid down, it would not follow that the institution was undertaking a contractual duty to its students; that would be an issue of third-party beneficiary law unilluminated by anything in the parties' briefs. But of course the institution could if it wanted (and it was permitted by state law) enter into a contract with the students to abide by the ABA's standards; and correspondence placed in the record by the plaintiff could conceivably be interpreted as a commitment by SIU's law school *to its students* that it will abide by those standards. Even so, the plaintiff has no case, for he has misunderstood the standards, generating a spurious conflict with the law school's rule on readmission. The purpose of Standard 505 is simply to assure the school that it need not, to retain its accreditation, adopt a blanket rule of never readmitting a student that it has flunked out. This is apparent from comparison with the ABA's Standard 501(b), which provides that "a law school shall not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar." Standard 505 backstops this basic norm by making clear that the law school is not permitted to readmit a student who by flunking out has proved that his admission was in violation of 501(b). There is no implication that the school may not raise the hurdle to readmission higher. Indeed, there is nothing in the standards to suggest that the law school *must* consider readmitting a student who has flunked out. And surely at the very least the standard permits the school to particularize the vague limitation that the standard imposes on readmissions, and this is what SIU's law school has done in forbidding the readmission of a student whose academic performance is as abysmal as the plaintiff's was. As it is plain that the law school did not violate its contract with the plaintiff, and as his other claims are frivolous, the suit was properly dismissed.

Affirmed.