**Timothy J. McALPIN and Leslie Dean, Plaintiffs,**

**v.**

**Dean Donald L. BURNETT, Jr. and Professor R. Thomas Blackburn, Defendants.**

**No. CIV.A.3:95CV–605–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Aug. 29, 2001.

Timothy J. McAlpin, Lexington, KY, pro se.

Leslie Dean, Harrodsburg, KY, pro se, Lee M. Dean, Harrodsburg, KY, for Leslie Dean.

Henry S. Alford, Middleton & Reutlinger, Louisville, KY, Holland N. McTyeire, V, Greenebaum Doll & McDonald, Louisville, KY, Angela D. Koshewa, Louisville, KY, for Donald L. Burnett and R. Thomas Blackburn.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiffs, Timothy J. McAlphin[1] and Leslie Dean bring this action against Defendants, Donald L. Burnett, former Dean and a professor at the University of Louisville School of Law (the "Law School") and Professor R. Thomas Blackburn for breach of contract, violation of 42 U.S.C. § 1983, and various other state law torts. These claims arise from the Law School's decision to deny Plaintiffs admission after each flunked an exam in the Law School's "Admission by Performance Program" (the "ABP" program). The parties have filed cross-motions for summary judgment.

### I.

Under the ABP program Plaintiffs were offered admission to the Law School contingent on passing two summer school courses: Contracts and Corporations. Plaintiffs each failed Corporations. Plaintiff Dean alleges she failed the Corporations course because she was wrongfully denied twenty-three minutes of exam time and that Professor Blackburn knew her identity when he graded her exam, in breach of a promise of anonymous grading. Plaintiff McAlphin alleges only that Blackburn knew of his identity when grading his exam in breach of the promised anonymity.

Because of a back ailment, Dean elected to type, rather than hand-write, her exam. On exam day she was the only student electing to type her exam. The Law School required typists and hand writers to sit in separate rooms. When Professor Blackburn delivered examination instructions he summoned her from the typing room and instructed her to be back in the hand-writers' examination room before he returned to collect exams. Dean calculates the time required to move from room to room cost her twenty-three minutes. She also alleges that in summoning her from the typing room Blackburn learned she was the only student typing her exam, and that he carried this knowledge with him in grading her exam. Plaintiff McAlphin alleges that, in the process of returning his exam, Professor Blackburn looked at his exam and memorized his exam number.

Both Plaintiffs filed a grievance with the Law School's student grievance committee

---

1. It is unclear whether Plaintiff McAlphin has abandoned this action. He does not appear to have joined the current motion for summary judgement filed by Plaintiff Dean and Defendant's appear address their motion for summary judgement to Dean alone. However-er, McAlphin's claims were properly removed and, since the conclusions of this Memorandum Opinion apply to with equal or greater force to his claims and Dean's, the Court addresses this Memorandum Opinion to both Plaintiffs.

(the "Committee"). Both were granted a hearing where they had an opportunity to present evidence. The Committee recommended dismissal. Reviewing the Committee's recommendation the University of Louisville Provost accepted the recommendation of dismissal as to Dean's "lost time" grievance but did not dismiss her "anonymous grading" grievance. He directed the Law School to re-grade Dean's exam along with a random sampling of six other exams from the same course. All the exams were to be typed and a Law School Professor other than Blackburn was to re-grade her exam. He appears to have accepted the Committee's recommendation of dismissal as to McAlpin in its entirety.

Before this re-grade could occur, Dean unilaterally terminated the grievance process and intervened in McAlphin's suit filed in Jefferson County Circuit Court and seeking an injunction compelling admission to the Law School. In *McAlpin v. Blackburn*, No. 95 CI04478 (Jefferson Cir. Ct. Entered Aug. 18, 1995) the court dismissed the claims against the University of Louisville citing KRS 45A.245 (requiring claims for breach of contract against the state be brought in Franklin Circuit Court). The § 1983 due process claims against Burnett and Blackburn and various state law claims remained, and these were removed to this Court.[2] Plaintiffs refiled their breach of contract claim against the University in Franklin Circuit Court. The claims remaining in this Court were stayed pending a decision by the Franklin Circuit Court.

Plaintiffs then re-filed their breach of contract claims in Franklin Circuit Court.

*McAlpin v. The University of Louisville*, No. 95–CI–01176 (Franklin Cir. Ct. Entered Aug. 7, 1998). The court granted Defendants' motion for summary judgment dismissing the breach of contract claim for lack of ripeness, Plaintiffs having failed to exhaust their administrative remedies. The decision was appealed and the Kentucky Court of Appeals affirmed. *Dean v. University of Louisville*, No.1998–CA–002071–MR (Ky. Ct. Appeals, Rendered March 17, 2000). The action in this Court was then reinstated and cross-motions for summary judgment soon followed.

## II.

On a motion to dismiss a plaintiff's factual allegations are taken as true and "if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then dismissal is proper." *Performance Contracting, Inc., v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir.1998) (citing *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996)). A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Performance Contracting Inc.*, 163 F.3d at 369.

██ Plaintiffs complaint[3] contains a number of inferential allegations and vague references to various causes of action. In order to address the current motions for summary judgment Plaintiffs claims can be divided into three general groups: those that were expressly considered and resolved by the state courts; the

---

**2.** Many, if not all, of these claims may be precluded by the Jefferson Circuit Court's initial dismissal of the action. However, because that decision was not clear as to precisely which claims it dismissed and which it reserved, and since the resulting dismissal of these claims by this Court is the same, the Court considers the merits of each.

**3.** Plaintiff Dean's claims are actually spread over three documents: Plaintiff McAlpin's original complaint which Dean adopted in her motion to intervene; the motion to intervene; and the amended motion to intervene. For purposes of this Memorandum Opinion the Court considers the claims in all three documents.

§ 1983 claims that were stayed during the state court proceedings and reserved for consideration by this court; and other state law causes of action that were not specifically addressed in state court.

The Franklin Circuit Court and the Kentucky Court of Appeals expressly considered, and dismissed, the claims for breach of Contract. These claims allege that the Law School breached a contract to grade students in the ABP program anonymously and to grade them independently, without comparing them to their peers. It is emphatically clear that any claim for breach of contract is barred by res judicata and the Rooker Feldman doctrine. *See Yeoman v. Commonwealth,* 983 S.W.2d 459, 465 (Ky.1998); 28 U.S.C. § 1738; *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 835, 836 (6th Cir.2001).

The Franklin Circuit Court, affirmed by the Kentucky Court of Appeals, expressly considered the merits of the breach of contract claims and dismissed them on summary judgment. This Court could consider these claims only by finding the Franklin Circuit Court and the Kentucky Court of Appeals were wrong. Under Kentucky's adoption of the res judicata doctrine; 28 U.S.C. § 1738; and the Rooker–Feldman doctrine, the Court may not consider them.

### III.

The complaint alleges two constitutional violations as grounds for a § 1983 cause of action: violation of Plaintiff's right to equal protection and violation of her right to procedural due process.

■ Dean claims that Defendants violated her right to equal protection by denying her, "a handicapped person who required the use of a typewriter," equal test time. Plainly, no university exam policy targeted disabled individuals on its face. At most the policy of separating those typing exams from those writing exams by hand, combined with the policy of requiring typists to move to a different room to receive instructions and return exams, had the incidental effect of diminishing the time in which typists could complete their exam.[4] It is equally plain that Dean has no fundamental Constitutional right to equal time on a law school exam. Since the Law School's exam policy involved neither a constitutionally suspect classification nor a fundamental right it will be upheld if it is reasonably related to any legitimate purpose. *Gregory v. Ashcroft,* 501 U.S. 452, 471, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). The Law School's policy of separating those who type and hand-write their exams easily passes this test.

■ McAlphin's original complaint alleges that Professor Blackburn treated him differently than other students by offering other students more assistance during office visits than Blackburn offered him. McAlphin's claim of "unfair treatment" does not state a cognizable legal claim. If construed as an equal protection claim, it is clearly reasonable for a professor to offer different students different assistance at different times.

■ A claim for violation of procedural due process requires plaintiffs to prove they (1) were deprived of a protected property interest (2) without due process. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Several courts have considered whether a student has a property interest in admission to, or continua-

---

4. Even if the exam policy did target Plaintiff because of a disability, the policy would be upheld where it rests on any rational basis. *City of Cleburne v. Cleburne Living Center,* *Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

tion of, a higher education program that is protected by the Due Process Clause. *See e.g., Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Board of Curators v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Waller v. Southern Illinois University,* 125 F.3d 541, 542 (7th Cir.1997), *Davis v. Mann,* 882 F.2d 967, 973 (5th Cir.1989); *Nash v. Auburn University,* 812 F.2d 655, 660 (11th Cir.1987); *Haberle v. University of Alabama,* 803 F.2d 1536, 1539 n. 1 (11th Cir.1986); *Mauriello v. University of Medicine & Dentistry,* 781 F.2d 46, 52 (3d Cir.1986). Each of these courts has assumed, without actually deciding, that the prospective student did have a protected interest in being admitted to, or remaining in, the academic program. The Court will do the same.

█ Assuming Plaintiffs had a protected property interest in being admitted to, or remaining in, the Law School their claims fail to allege any fact causing the Court to conclude they have not received all the process they are due. The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *see also, Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Horowitz,* 435 U.S. at 85, 98 S.Ct. 948; *Brody v. City of Mason,* 250 F.3d 432, 437 (6th Cir.2001) (citing *Boddie* ). Plaintiffs have had ample opportunity for a hearing. In a case, such as this, where "[c]onsiderations of profound importance counsel restrained judicial review of the substance of academic decisions," and where a legitimate and meaningful appeals process appears to be in place, the Court will not review the merits of the Law School's admissions decisions. *Ewing,* 474 U.S. at 225 n. 12, 106 S.Ct. 507 ("Discretion to determine, on academic grounds, who may be admitted to study, has been described as one of 'the four essential freedoms' of a university.") (quoting *Regents* of *University of California v. Bakke,* 438 U.S., 265, 312, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978)). Plaintiff's Fourteenth Amendment right to procedural due process was not violated.

IV.

Various state law claims remain. Among these are allegations that (1) Defendants "harassed and discriminated" against [Plaintiff Dean] on the basis of her being "a handicapped person who required the use of a typewriter"; (2) that Professor Blackburn demonstrated "outrageous misconduct" toward Dean when he made inconsistent statements and to took inconsistent positions on each of two separate occasions; (3) that both Defendants committed fraud by "downgrading test scores to fill limited number of placements available"; (4) that "the corporations class is a second or third year class and should not have been used in the admissions by performance program ... [t]he students should not have had to complete the 'entire' course of Corporations for this program, some 900 pages in six weeks"; and (5) that Plaintiffs found Professor Blackburn "abnormally distant, arrogant, and rude" and would not give them a direct answer to their questions.[5] Taking all plaintiffs factual allegations as true none of these claims alleges facts with respect to the material elements of any viable legal theory under which Plaintiff could sustain any recovery.

---

5. The ordering of these claims is the Court's own, as construed by reading the complaint, the intervening complaint, and the amended intervening complaint. While the Court has attempted to present Plaintiffs' claims in the best possible light, it has necessarily omitted many of the obviously superfluous details.

■ As to the first claim, Plaintiff's reference to a back injury sustained in a car wreck does not, by itself, qualify her as disabled under any federal statute prohibiting discrimination because of a disability. *See e.g.,* the Americans with Disabilities Act, 42 U.S.C. § 12102 (providing in part that "The term 'disability' means, with respect to an individual— (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual ...").  Nor does Plaintiff allege facts supporting even an inference that the Law School or any of the individual defendants intentionally targeted Plaintiff because of any disability, as explained above.

■ As to the second claim, the facts alleged fall far short of Kentucky's tort of outrage, outrageous and intolerable conduct that offends generally accepted standards of decency and morality. *Burgess v. Taylor,* 44 S.W.3d 806, 811 (Ky.Ct.App. 2001).  To be sure, law professors, like lawyers, can be shifty and law exams are stressful, unpleasant experiences.  This does not support a claim of outrage.

■ As to the third claim for fraud, while state law governs the burden of proving fraud at trial, the procedure for pleading fraud in a diversity suit in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b).  *Minger v. Green,* 239 F.3d 793, 800 (6th Cir. 2001); *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1204, 1296 (2d ed.1990). Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity ..." In Kentucky a claim for fraud contains six elements: a) a material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.  *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999).

■ Plaintiff's complaint does not identify a material statement in connection with the grading of exams in the ABP program which is false or reckless.  That the ABP program had a higher failure rate than the normal Law School class does not suggest that Law School officials applied different standards to ABP exams than other exams.  The difference could just as well be explained by the difference in a group of students seeking to gain admittance to a law school and those who have been admitted to that law school.  Even if the criteria for passing the ABP program were more stringent than passing a regular law school class this would not, by itself, constitute fraud.  As explained above, school officials properly have wide discretion in determining and applying academic standards for admission to school programs.

The fourth and fifth claims aptly describe law school in America.  *See e.g.,* SCOTT TUROW, ONE L: THE TURBULENT TRUE STORY OF A FIRST YEAR AT HARVARD LAW SCHOOL (1997).  And the Court can sympathize with law school assignments that are too long, and law school professors who will not squarely answer a question.  But, without doubt, there is absolutely no relief the Court can grant for these claims.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Having carefully considered the parties' pleadings and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgement is SUSTAINED.  Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

This is a final and appealable order.