Affirmed by published opinion. Judge THORNBURG wrote the opinion, in which Judge LUTTIG and Judge TRAXLER joined.
OPINION
THORNBURG, District Judge:
In this appeal we are asked to decide whether a debtor who has filed for Chapter 7 bankruptcy may “strip off’ an allowed unsecured lien pursuant to 11 U.S.C. § 506(d). Because we find that the Supreme Court’s reasoning in Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), is equally applicable to “strip offs” as to “strip downs”, we hold that a debtor may not strip off an unsecured but allowed lien pursuant to Section 506(d).
I. BACKGROUND
Appellants, husband and wife, filed a joint voluntary Chapter 7 bankruptcy petition. Their residence is subject to a valid first deed of trust having a principal balance due of $181,826. The property has a current fair market value of $179,000. The property is also subject to a consensual, bargained-for second deed of trust securing a loan in the amount of $47,305, payable to Sovereign Bank, successor in interest to FirstPlus Financial, Inc. The parties agree that the second deed of trust is a fully allowed claim, but wholly unsecured as to the property.
Appellants subsequently filed a complaint in the bankruptcy proceeding pursuant to 11 U.S.C. §§ 506(a) and (d) requesting the bankruptcy court to strip off the second deed of trust as a wholly unsecured, and therefore void, lien.[1] No response to the complaint having been filed, Appellants filed a timely motion for entry of default and default judgment. The bankruptcy clerk entered default against FirstPlus Financial, Inc., on January 27, 2000. On March 20, 2000, however, the *780 bankruptcy court declined to enter a default judgment, and instead, entered an order denying the motion. It also entered a separate, second order dismissing Appellants’ complaint.
By memorandum of decision filed with the foregoing orders, the bankruptcy court explained its reasoning concerning the orders and its refusal to strip off the second deed of trust.[2] By timely notice, the bankruptcy court’s rulings were appealed to the district court. On August 14, 2000, without further discussion and by adopting the reasoning of the bankruptcy court, the district court affirmed both orders of the bankruptcy court. Timely notice of appeal was filed.
Appellate jurisdiction is based upon the provisions of 28 U.S.C. § 158(d), granting courts of appeal jurisdiction of appeals of all final decisions, judgments, orders, and decrees entered pursuant to 28 U.S.C. §§ 158(a) and (b).
A district court’s conclusions of law are reviewed de novo. In re Shearin, 224 F.3d 846, 348-49 (4th Cir.2000); In re Wilson, 149 F.3d 249, 251 (4th Cir.1998). For the reasons that follow, we affirm the district court.
II. ISSUES
A. Default
We first address Appellants’ contention that the district court erred in affirming the bankruptcy court’s orders dismissing the complaint and refusing to enter a default judgment in their favor. The position is not well taken.
The defendant, by his default, admits the plaintiffs well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. ... As the Supreme Court stated in the “venerable but still definitive case” of Thomson v. Wooster: a default judgment may be lawfully entered only “according to what is proper to be decreed upon the statements of the bill, assumed to be true,” and not “as of course according to the prayer of the bill.” The defendant is not held ... to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiffs right to recover.
Nishimatsu Constr. Co., Ltd. v. Houston Nat’l Bank, 515 F.2d 1200, 1206 (5th Cir.1975) (quoting Thomson v. Wooster, 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed. 105 (1885)) (internal quotations and other citations omitted). The court must, therefore, determine whether the well-pleaded allegations in Appellants’ complaint support the relief sought in this action. Weft, Inc. v. G.C. Inv. Assocs., 630 F.Supp. 1138, 1141 (E.D.N.C.1986), aff'd, 822 F.2d 56 (table), 1987 WL 36124 (4th Cir.1987). For the purpose of this decision, the complaint alleges, the default establishes, and the parties agree that the fair market value of the property is $179,000, that the amount owed to the holder of the first deed of trust is $181,876, and that the amount owed to the holder of the second deed of trust is $47,305.46. The district court correctly concluded that acceptance of these undisputed facts does not neces *781 sarily entitle the Appellants to the relief sought; in this case, stripping off the second deed of trust. Nishimatsu, 515 F.2d at 1206.
B. Strip off
We now address the primary issue before the court: May Chapter 7 debtors strip off an allowed junior lien on their residence where the senior hen exceeds the agreed fair market value of the real property?[3]
Appellants contend that 11 U.S.C. § 506(a) determines the secured status of claims, and that pursuant to its provisions Appellee’s junior lien is unsecured and therefore may be “stripped off’ pursuant to 11 U.S.C. § 506(d). Section 506(a) provides in pertinent part:
An allowed claim of a creditor, secured by a hen on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor’s interest in the estate’s interest in such property ... and is an unsecured claim to the extent that the value of such creditor’s interest is less than the amount of such allowed claim.
11 U.S.C. § 506(a). Section 506(d) of that Title provides in part that “to the extent that a hen secures a claim against the debtor that is not an allowed secured claim, such hen is void.” [4]
In Dewsnup the Supreme Court addressed the question of whether Chapter 7 debtors could strip down a consensual hen against their real property. Those debtors’ property was encumbered by a first deed of trust securing payment of $120,000. The property had an approximate value of $39,000, leaving an unsecured deficiency of approximately $81,000. The debtors then sought to have the secured hen “stripped down” to $39,000, the claimed fair market value of the property, pursuant to the provisions of § 506(d). The rehef sought by debtors was denied by the lower courts. The Supreme Court affirmed.
[W]e hold that § 506(d) does not allow petitioner to “strip down” respondents’ hen, because respondents’ claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words “allowed secured claim” must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that hens pass through bankruptcy unaffected.
502 U.S. at 778, 112 S.Ct. 841 (internal footnote omitted).
Appellants contend however, that Dewsnup controls only a “strip down” of a partially secured hen, not a “strip off’ of a wholly unsecured hen, citing Howard v. Nat’l Westminster Bank, 184 B.R. 644, 646 (Bankr.E.D.N.Y.1995), and other bankruptcy court decisions. We are not persuaded.
The reasoning in Dewsnup is not ambiguous.
The practical effect of [Appellants’] argument is to freeze the creditor’s secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by *782 the time of the foreclosure sale. The increase would accrue to the benefit of the debtor ... as a “windfall.”
[T]he creditor’s lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor....
Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so. See Farrey v. Sanderfoot, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337[ ] (1991) (“Ordinarily, hens and other secured interests survive bankruptcy”); Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66[ ] (1991) (“Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim — namely, an action against the debtor in personam — while leaving intact another — namely, an action against the debtor in rem ”).
Dewsnup, 502 U.S. at 417-18, 112 S.Ct. 773 (internal footnote omitted).
[T]o attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become “unsecured” for purposes of § 506(a) without the new remedy’s being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.
Id., at 420, 112 S.Ct. 773. Following the Supreme Court’s teachings in Dewsnup, as we must, we discern no principled distinction to be made between the case sub judice and that decided in Dewsnup. The Court’s reasoning in Dewsnup is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien.
Appellants next contend that the Supreme Court’s decision in Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), permits the stripping off of wholly unsecured liens. We disagree. Nobelman represented a debtor’s effort under Chapter 13 (Bankruptcy Code, 11 U.S.C. §§ 506(a) and 1322(b)(2)) to bifurcate an undersecured homestead claim into a secured claim and an unsecured claim, thereby reducing the amount of the mortgage to the judicially determined fair market value of the property. A unanimous court denied the relief sought. The decision in no way affects the Court’s ruling in Dewsnup, a Chapter 7 proceeding interpreting the relationship between 11 U.S.C. §§ 506(a) and 506(d). Nobelman’s only reference to Dewsnup is to affirm its language as to rights that were “bargained for by the mortgagor and the mortgagee.” Nobelman, 508 U.S. at 329-30, 113 S.Ct. 2106 (citing Dewsnup, 502 U.S. at 417, 112 S.Ct. 773). Indeed, the Nobelman Court made no reference to (much less discussed) § 506(d), the code provision at issue here and in Dewsnup. We find no basis for divining language in Nobelman that contradicts or modifies in any respect the clear holding of Dewsnup.
We are aware, as Appellants argue, that some courts are not in agreement with this analysis of Dewsnup. See Yi v. Citibank, 219 B.R. 394, 397 (E.D.Va.1998) (Chapter 7 debtor’s proceeding — “Because Citibank’s lien is wholly unsecured, by definition it cannot be an ‘allowed secured claim.’ From this it inexorably follows that the lien is void.” (citing Howard, 184 B.R. at 644)); In re Smith, 247 B.R. 191 (W.D.Va.2000); Farha v. First American Title Ins., *783 246 B.R. 547, 549 (Bankr.E.D.Mich.2000) (where claim is unsecured rather than un-dersecured “there is no allowed secured claim under § 506(a))”; Zempel v. Household Finance Corp., 244 B.R. 625 (Bankr.W.D.Ky.1999) (same).
Other courts have concluded, as do we, that a Chapter 7 debtor may not use § 506(d) to strip off an allowed, wholly unsecured consensual junior lien from real property.
In Laskin v. First Nat’l Bank of Keystone, 222 B.R. 872 (9th Cir. BAP (Cal.) 1998), Chapter 7 debtors sought to use § 506(d) to strip off a junior lien on their residence where the senior lien exceeded the fair market value of the real property.
[Wjhether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in Dewsnup [ ] — that liens pass through bankruptcy unaffected, that mortgagee and mortgagor bargained for a consensual hen which would stay with real property until foreclosure, and that any increase in value of the real property should accrue to the benefit of the creditor, not the debtor or other unsecured creditors — are equally pertinent. Neither Laskin nor the courts in Yi and Howard propound any rationale for distinguishing. ... Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor.
Id., at 876 (citation omitted). See also In re Fitzmaurice, 248 B.R. at 361-68 (Chapter 7 debtors may not use 11 U.S.C. § 506(d) to “strip off’ completely unsecured junior mortgage hens from their property); In re Swiatek, 231 B.R. 26 (Bankr.D.Del.1999) (Dewsnup reasoning applies whether hen is partially or wholly unsecured and extending Dewsnup rationale to judgment hens which are wholly unsecured); In re Virello, 236 B.R. 199 (Bankr.D.S.C.1999) (refers to doctrine of stare decisis and prohibits use by Chapter 7 debtors of § 506(d) to strip off wholly unsecured consensual hens from real property).
The majority opinion did not escape criticism from numerous scholars, see Cunningham, 246 B.R. at 246, or an erudite dissent by Justice Scaha, Dewsnup, 502 U.S. at 420, 112 S.Ct. 773. Even so, “[wjhile the opinion may be the subject of scholarly criticism, it remains the law of the land.” Cunningham, at 246.
We accept the fact that in many cases junior hen holders may have little or no opportunity to recover all or even a part of their unsecured claims. Nevertheless, the parties bargained for their positions with knowledge that a superior hen existed. Under this Chapter 7 proceeding, they are entitled to their hen position until foreclosure or other permissible final disposition is had. Likewise, we are acutely aware that in the volatile, modern real estate market, substantial price variations occur with weekly or monthly regularity.
In conclusion, we hold that an allowed unsecured consensual hen may not be stripped off in a Chapter 7 proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d).

AFFIRMED.

. FirstPlus Financial, Inc., was lienholder at the time the complaint was filed and never responded to the complaint.

. The decision, Cunningham v. Homecomings Financial Network, 246 B.R. 241 (Bankr.D.Md.2000), was a joint opinion deciding two separate adversary proceedings including Appellants’ action and the Cunningham action, both involving the same ultimate "strip off” question consolidated for disposition by the court. The Cunninghams did not appeal. However, Homecomings Financial Network, holder of the second Cunningham lien, was permitted to intervene by order of the bankruptcy court filed April 18, 2000, and then became an Appellee in this action.

. "The term ‘strip down' is used when a mortgage is partially secured and partially unsecured, while the term 'strip off' is used when a junior mortgage is totally unsecured.” In re Fitzmaurice, 248 B.R. 356, 357 n. 2 (Bankr.W.D.Mo.2000).

. "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest ... objects.” 11 U.S.C. § 502(a).