In re Robert E. BESSETTE and Kathryn Y. Bessette, Debtors.

Robert E. Bessette and Kathryn Y. Bessette, Plaintiffs,

v.

Bank One, Michigan, Defendant.

Bankruptcy No. 01–20637.
Adversary No. 01–2039.

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Oct. 30, 2001.

---

William A. Siebert, Gladwin, MI, for Plaintiffs.

George E. Pawlowski, Grand Rapids, MI, for Defendant.

## OPINION GRANTING DEFENDANT BANK ONE, MICHIGAN'S MOTION TO DISMISS

ARTHUR J. SPECTOR, Chief Judge.

Defendant Bank One, Michigan ("Bank One") moves the Court to dismiss the Plaintiffs'/Debtors' adversary complaint to avoid its lien on the Debtors' residential property under 11 U.S.C. § 506(d).[1] The Court will grant Bank One's motion because even if the Court assumes that all the allegations of fact in the Debtors' complaint are true, neither § 506(d) nor any other provision of the Bankruptcy Code entitles the Debtors to the relief requested.

### I. *Facts*

The Debtors filed a voluntary petition for relief under chapter 7 on March 6, 2001. On Schedule A of the petition, the Debtors indicated that they were fee simple owners of real property commonly described as 367 Grove Street, Gladwin, Michigan with a current market value of $55,000.[2] On Schedule C, the Debtors claimed a $16,495.87 exemption in this property pursuant to § 522(d)(1). On Schedule D, the Debtors indicated that Bank One held two mortgages on this property and that there was a balance owing of $58,504.13 on the first mortgage,[3] and $14,339.15 on the second mortgage.[4] According to the Debtors, both mortgages were recorded in the records of Gladwin County. (Complaint, ¶¶ 7, 10.)

On May 10, 2001, the Debtors filed a complaint seeking to void Bank One's second mortgage on the property. According to the complaint, the fair market value

---

1. Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. According to the Debtors, the legal description of this property is "Lots 1, 2, 3, and the North ½ of Lot 4 of Block 5 of Smallwood Shores Subdivision, according to the recorded Plat thereof in the office of the Register of Deeds for Gladwin County, Michigan, at Liber 1 of Plats, page 32." (Complaint, ¶ 4.)

3. According to the Debtors, they originally entered into the first mortgage on or about June 17, 1999 with Franklin Mortgage Funding, Inc., which later assigned the mortgage to Bank One. (Complaint, ¶¶ 7–8.)

4. According to the Debtors, they originally entered into the second mortgage on or about June 17, 1999 with Michigan Fidelity Acceptance Corporation, which later assigned the mortgage to Bank One. (Complaint, ¶¶ 10–11.)

of the property on the petition date was "not greater than $70,000" and the outstanding balance on the first mortgage was $58,411.58. (Complaint, ¶¶ 5, 8.) The complaint also stated that the "Debtors exempted $16,500 [in] equity in the real estate under 11 U.S.C. § 522(d)(1)." (Complaint, ¶ 6.) The Debtors argue that, in determining whether there is any equity in the property to secure Bank One's second mortgage, the Court must *first* deduct from the value of the property the amount of the exemption to which they assert they are entitled, and next, the amount owing on the first mortgage. (Debtors' Brief In Opposition to Motion of Bank One for Judgment on Pleadings at 2.) The Debtors argue that because "[t]he sum of the $16,500 exempt amount[5] and the $58,411.58 balance on the first mortgage [totaling $74,911.58] is in excess of the fair market value of the estate," there is no collateral securing Bank One's second mortgage, and therefore it is void pursuant to § 506(d). (Complaint, ¶¶ 9,12.)

On June 15, 2001, Bank One answered the Debtors' complaint, basically taking issue with only one of its factual allegations. Bank One's answer asserts that Bank One has insufficient information to determine if the Debtors' valuation of the property at issue ("at not greater than $70,000") is accurate. (Answer, ¶ 5.) The answer notes that an appraisal performed on the property on June 17, 1999 in connection with the mortgages indicated that the property was worth $74,000 at that time. (*Id.*) The answer disputes all of the Debtors' legal conclusions drawn from the stated facts. Specifically, Bank One denies that (1) the Debtors are entitled to exempt any portion of the value of the property; (2) the Debt-

ors have any equity in the property; and (3) its second mortgage is unsecured. (Answer, ¶¶ 6, 12.) The answer asserts, by way of affirmative defenses, that (1) "pursuant to 11 U.S.C. § 522(c)(1) [the Debtors] cannot by claiming an exemption destroy [its] lien" and (2) "pursuant to § 506(d) [the Debtors are] not permitted to strip down [its] secured claim." (Answer, Affirmative Defenses A, B.)

On August 14, 2001, Bank One filed a motion to dismiss the Debtors' complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending that even if all of the Debtors' allegations in their complaint are considered true, the Debtors "have failed to state a claim upon which relief can be granted." Bank One contends that because both its first and second mortgages on the Debtors' property are allowed secured claims that cannot be voided under § 506(d), under § 522(c)(2)(A)(ii) its liens are unaffected by any exemptions in the property claimed by the Debtors.

## II. *Discussion*

### A. *Standard Under Fed R. Civ. P. 12(b)(6)*

Fed.R.Civ.P. 12(b)(6), incorporated into bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012(b), provides:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted[.]

A court should dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a

---

**5.** The Debtors appear to now be arguing that they are actually entitled to exempt $32,300 of the value of the property pursuant to § 522(b). (Debtors' Brief In Opposition to

Motion of Bank One for Judgment on Pleadings at 2 n. 1.) However, the amount of the Debtors' claimed exemption is immaterial given the facts of this case.

claim only when, in considering "all well-pleaded allegations in the complaint as true ... 'it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief[.]' " *Kostrzewa v. City of Troy,* 247 F.3d 633, 638 (6th Cir.2001) (quoting *Performance Contracting, Inc. v. Seaboard Surety Co.,* 163 F.3d 366, 369 (6th Cir. 1998)); *see also Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). Moreover, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, a court " 'need not accept as true legal conclusions or unwarranted factual inferences.' " *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1103–04 (6th Cir.1995) (quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)). Applying this standard, it is appropriate for the Court to grant Bank One's motion to dismiss.

### B. *The Debtors' Claimed Exemption In the Subject Property Has No Impact on Bank One's Liens*

Treating all of the Debtors' factual assertions as true, the Debtors' claimed exemption under § 522(d)(1) in the subject property has no impact on Bank One's liens. Section 522(d)(1) provides:

The following property may be exempted under subsection (b)(1) of this section:

(1) The *debtor's aggregate interest, not to exceed $16,150 in value, in real property* or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(1) (italics added). As this provision expressly states,

the dollar amount is applied only to the value of the debtor's interest in the property—in other words, the debtor's *equity* in the property. When a debtor's homestead is subject to a valid mortgage that is not subject to any of the trustee's or debtor's avoiding powers, and the property is sold because of its indivisibility, the debtor is entitled to an exemption in any *surplus* resulting from the sale.

4 *Collier on Bankruptcy,* ¶ 522.09[1], at 522–50 (15th ed. rev.2001) (emphasis added); *see also* 2 *Norton Bankruptcy Law and Practice 2d* § 46:10, at 46–19 (1997) ("Because the exemption is limited to 'the debtor's aggregate interest,' the value of the exemption depends upon *the equity* (if any) *in excess of unavoidable liens.*") (emphasis added). Therefore, contrary to the Debtors' assertion, to determine if a debtor is entitled to an exemption under § 522(d)(1), the *first* step is to determine if the debtor has any equity in the property by deducting from the value of the property, the amount of any liens on the property that have not been avoided. Only if there is equity remaining in the property after this calculation can a debtor exempt it from property of the estate up to the limit provided by § 522(d)(1). However, a debtor cannot use § 522(d)(1) to void any portion of an otherwise valid lien. Therefore, the Debtors' claimed exemption does not in any way impact Bank One's liens and if the Debtors want to void either of Bank One's mortgages, they must do so under the authority of some other statutory provision.

### C. *Bank One's Second Mortgage Cannot Be Voided Under § 506(d)*

The Debtors have alleged that they can avoid Bank One's second mortgage under § 506(d). This provision provides:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(1)-(2). The Debtors argue that because no equity remains after deducting the amount of their exemption plus the balance of Bank One's first mortgage, Bank One's second mortgage is wholly unsecured under § 506(a) and therefore, under § 506(d), it is "not an allowed secured claim" and is void. Section 506(a) provides, in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

The Court disagrees with the Debtors' conclusion that §§ 506(a) and (d) permit them to void Bank One's second mortgage. First, as discussed above, the Debtors cannot deduct from the value of the property, the amount of their claimed exemption before considering the outstanding amounts of Bank One's liens in order to render Bank One's second mortgage either partially or completely unsecured. Second, even assuming that Bank One's first mortgage exceeded the fair market value of the property without considering the Debtors' claimed exemption, Bank One would still have an "allowed secured claim" for purposes of § 506(d) based on its second mortgage, and therefore, this lien on the property could not be voided under this provision.

The Debtors did not allege any specific value for the property in their complaint, stating only that such value is "not greater than $70,000." However, the Debtors listed the value of the property as $55,000 in their schedules. Construing the allegations in the complaint most favorably to the Debtors would require the Court to value the property at the lowest possible figure consistent with the Debtors' allegations because the Debtors' theory of the case is based on their conclusion that there is no value in the property to support Bank One's second mortgage after making all permissible deductions. If the Court values the property at $55,000 (which is "not greater than $70,000"), Bank One's first mortgage would be partially secured and its second mortgage would be wholly unsecured as the Debtors alleged.[6] How-

---

**6.** The Debtors have presented no evidence to support their $55,000 valuation of the property, nor have they presented any evidence showing that they are qualified to appraise the property. If, as Bank One alleges, the property was appraised for $74,000 on July 17, 1999, and if Bank One could show that the person performing the appraisal was qualified, the appraiser's opinion would likely carry more weight than that of the Debtors who have an interest in the matter. (Or the Debtors might show that the property had depreciated significantly after the date of the appraisal.) If the Court were to find that the property was worth closer to $74,000 than to $55,000, any value above $58,411.58 (the balance of Bank One's first mortgage) would render Bank One's first mortgage fully se-

ever, even assuming Bank One's second mortgage is wholly unsecured, the Court must grant Bank One's motion to dismiss because the Debtors cannot use § 506(d) to void a consensual wholly unsecured junior mortgage.

In *In re Davenport,* 266 B.R. 787, 789 (Bankr.W.D.Ky.2001), the court addressed "the question of whether individual Chapter 7 debtors, whose property value is less than the amount of senior liens, may avoid wholly unsecured junior mortgages using § 11 U.S.C. 506(d)." The issue arose as a result of the debtors'/mortgagors' motion to vacate an order lifting the stay regarding property owned by them, and permitting Area Bank, the mortgagee, to pursue its rights against the property. *Id.* at 787–88. The debtors in *Davenport* were owners of real property, which, according to the debtors' schedules, was worth $77,000, and was subject to four consensual mortgages: the first, having an outstanding balance of $43,016; the second, having a balance of $15,107; the third, having a balance of $24,907; and the fourth, which was in favor of Area Bank, having a balance of $62,000. *Id.* at 789. The debtors asserted, as a basis for their original objections to Area Bank's motion for relief from the stay, and in support of their motion to vacate the order lifting the stay, "that 1) Area Bank ha[d] no equity in the [p]roperty, and 2) the [d]ebtors intend[ed] to file an adversary proceeding against Area Bank 'stripping the mortgage of Area Bank on the property.'" *Id.* at 788.

The court assumed, only for the purpose of deciding whether the debtors had "good cause" to object to the lift stay motion and the order granting the motion based on their asserted grounds, "that the [d]ebtors' petition establish[ed] that the sum of the mortgage liens senior to Area Bank's mortgage exceed[ed] the value of the [p]roperty." *Id.* at 789. Under this assumption, the case involved an attempted "strip off" rather than "strip down" of Area Bank's mortgage.

The court explained the difference between "stripping down" and "stripping off" a lien: "The term 'strip down' is used in the situation where the inferior mortgage is partially secured whereas 'strip off' is used where the junior mortgage is totally unsecured." *Id.* at 790 (citing *Ryan v. Homecomings Financial Network,* 253 F.3d 778, 780 n. 3 (4th Cir.2001)). The *Davenport* court explained further that although

[i]n *Dewsnup,* the Supreme Court held that § 506(d) does not permit the "strip down" of a consensual lien on real estate, applying the general rule that liens pass through bankruptcy unaffected.... there is disagreement among bankruptcy and district courts as to whether a debtor is able to use § 506(d) to "strip off" a consensual mortgage.

*Id.* (citing *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); and comparing cases permitting debtors to "strip off" wholly unsecured liens on real property under § 506(d): *Yi v. Citibank (In re Yi),* 219 B.R. 394, 397 (E.D.Va.1998); *Warthen v. Smith (In re Smith),* 247 B.R. 191, 196 (W.D.Va.2000), *aff'd* 1 Fed.Appx. 178 (4th Cir.2001) (un-

cured, and Bank One's second mortgage partially secured. If this were the case, even the Debtors would concede that both of Bank One's mortgages were not subject to avoidance under § 506(d). (*See* Debtors' Brief In Opposition to Motion of Bank One for Judgment on Pleadings at 2 ("[The] teaching of [*Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct.

773, 116 L.Ed.2d 903 (1992) ] is that a claim with any security behind it at all is valid in full.").) However, for purposes of a Rule 12(b)(6) motion, the Court must construe all allegations in the Debtors' complaint in the light most favorable to the Debtors, and thus, for this purpose only, assumes that the property is valued at $55,000.

published), *cert. denied* — U.S. ——, 121 S.Ct. 2194, 149 L.Ed.2d 1025 (2001); *Farha v. First American Title Insurance Co. (In re Farha)*, 246 B.R. 547, 549 (Bankr. E.D.Mich.2000); *Zempel v. Household Finance Corp. (In re Zempel)*, 244 B.R. 625, 628 (Bankr.W.D.Ky.1999); with cases holding that debtors may not use § 506(d) to "strip off" wholly unsecured liens on real estate: *Laskin v. First National Bank of Keystone (In re Laskin)*, 222 B.R. 872, 876 (9th Cir. BAP 1998); *Keltz v. HomEq (In re Keltz)*, 261 B.R. 845, 846 (Bankr. W.D.Pa.2001); *In re Fitzmaurice*, 248 B.R. 356, 361–63 (Bankr.W.D.Mo.2000); *Cunningham v. Homecomings Financial Network (In re Cunningham)*, 246 B.R. 241, 243–46 (Bankr.D.Md.2000); *Cater v. American General Finance (In re Cater)*, 240 B.R. 420, 425 (M.D.Ala.1999); *In re Virello*, 236 B.R. 199, 206–07 (Bankr. D.S.C.1999); *Swiatek v. Pagliaro (In re Swiatek)*, 231 B.R. 26, 29–30 (Bankr.D.Del. 1999). Finding persuasive the reasoning in those cases holding that debtors cannot use § 506(d) to "strip off" wholly unsecured liens on real property, the *Davenport* court specifically "adopt[ed] the flawless reasoning and holding of the Fourth Circuit in *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir.2001)), which is the only court of appeals case to address this issue." *Id.* The *Davenport* court agreed with *Ryan* that the reasoning supporting the Supreme Court's holding in *Dewsnup* disallowing "strip down" of partially secured consensual liens on real property under § 506(d) is equally applicable to debtors' efforts to use § 506(d) to "strip off" wholly unsecured consensual liens on real estate. *Id.* (citing *Ryan*, 253 F.3d at 782.)

In *Dewsnup*, the chapter 7 debtor filed an adversary proceeding seeking, pursuant to § 506(d), to "strip down" a $120,000 undersecured consensual lien on property she owned to the $39,000 judicially determined fair market value of the property. 502 U.S. at 413, 112 S.Ct. 773. Before filing bankruptcy, the debtor had granted the lien on the property through a deed of trust in return for a $119,000 loan from the creditor. *Id.* at 412, 112 S.Ct. 773. The debtor argued that § 506(d) must be read in conjunction with § 506(a). The debtor reasoned that under § 506(a), only $39,000 of the creditor's $120,000 claim was secured because that was the fair market value of the property, leaving the balance of the creditor's claim as unsecured. Accordingly, the debtor concluded that portion of the creditor's claim in excess of $39,000 was "not an allowed secured claim" under § 506(d) and thus the lien securing it was void under this provision. *Id.* at 413–15, 112 S.Ct. 773.

The Supreme Court rejected this argument. It noted "that § 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities." *Id.* at 416, 112 S.Ct. 773. However, the Court explained that using § 506(a) to define what constitutes "an allowed secured claim" in § 506(d), as the debtors advocated, would result in a departure "from the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* at 416, 112 S.Ct. 773. It stated that "[a]part from reorganization proceedings, . . . no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." *Id.* at 418–19, 112 S.Ct. 773. The Court reasoned that, construing the ambiguous statutory provision in a way that would "effect a major change in pre-Code practice" in the absence of any signals from Congress, either in the Code or in the legislative history, that such was intended in enacting a provision, is "not plausible . . . and . . . contrary to basic bankruptcy principles." *Id.* at 419–20, 112 S.Ct. 773. Further-

more, because the mortgagee had bargained with the mortgagor for a lien on the property that would remain until foreclosure, that creditor's interest in the property should not be frozen at the value of the property on the petition date but rather should be determined at the foreclosure sale. In this regard, the Court stated:

> We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

> Such surely would be the result had the lienholder stayed aloof from the bankruptcy proceeding (subject, of course, to the power of other persons or entities to pull him into the proceeding pursuant to § 501), and we see no reason why his acquiescence in that proceeding should cause him to experience a forfeiture of the kind the debtor proposes. It is true that his participation in the bankruptcy results in his having the benefit of an allowed unsecured claim as well as his allowed secured claim, but that does not strike us as proper recompense for what petitioner proposes by way of the elimination of the remainder of the lien.

*Id.* at 417–418, 112 S.Ct. 773. For these reasons, the Court agreed with the creditor's position that for purposes of § 506(d), "the words 'allowed secured claim' ...

should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Id.* at 415, 112 S.Ct. 773. Because the lien was (1) an allowed claim under § 502, and (2) was "secured by a lien with recourse to the underlying collateral," the Court concluded that it was outside "the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured." *Id.* Accordingly, *Dewsnup* held that the debtor could not use § 506(d) to "strip down" the creditor's partially secured lien. *Id.* at 517, 112 S.Ct. 773.

According to *Davenport*, the teaching of *Dewsnup* is that § 506(d) applies only to claims that have not been allowed as a result of the claims allowance process. 266 B.R. at 791. The court explained that " § 506(d) does not confer standing on a debtor or anyone, for that matter, to avoid a lien.... '[It] provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se.' " *Id.* (citing and quoting *Laskin,* 222 B.R. at 876). Because the case was a chapter 7 no-asset case, which did not implicate the claims allowance process, the court in *Davenport* held that the debtor could not "strip off" the mortgagee's wholly unsecured junior lien pursuant to § 506(d). *Id.*

This Court agrees with the reasoning in the latter line of cases and holds that debtors may not use § 506(d) to void wholly unsecured consensual liens on real property. Regardless of whether the property's value is less than the amount of Bank One's first mortgage, Bank One holds allowed claims based on both its first and second mortgages, and these claims are secured by liens on the Debtors' property. The liens remain with the property until the property is sold subject to them or until foreclosure. Therefore, these claims

do not fall within the scope of § 506(d) and cannot be avoided.

## III. *Conclusion*

Based on the allegations in the Debtors' complaint, the Debtors can prove no set of facts that would support avoidance of Bank One's second mortgage. Accordingly, by separate order, the Court will grant Bank One's motion to dismiss the Debtors' complaint.