**UNITED KINGDOM MINISTRY OF DEFENCE, Secretary of State for Defence, as represented by the United Kingdom Ministry of Defence, Defence Procurement Agency, Plaintiff–Appellant,**

v.

**TRIMBLE NAVIGATION LIMITED, Defendant–Appellee.**

**United States of America, Amicus Curiae.**

No. 04–1129.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 29, 2004.

Decided Sept. 6, 2005.

**ARGUED:** Richard Osgood Duvall, Holland & Knight, L.L.P., Mclean, Virginia, for Appellant. Alan Arnold Pemberton, Covington & Burling, Washington, D.C., for Appellee. **ON BRIEF:** Jennifer A. Short, David B. Dempsey, Eric L. Yeo, Holland & Knight, L.L.P., McLean, Virginia, for Appellant. Eugene D. Gulland, Jennifer L. Plitsch, Derron J. Blakely, Covington & Burling, Washington, D.C., for Appellee. Peter D. Keisler, Assistant Attorney General, Paul J. McNulty, United States Attorney, Douglas N. Letter, Sushma Soni, United States Department of Justice, Washington, D.C., for Amicus Curiae.

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

Reversed and remanded by published opinion. Judge TRAXLER wrote the opinion, in which Judge WIDENER and Judge GREGORY joined.

TRAXLER, Circuit Judge.

The Contract Disputes Act of 1978 (CDA or Act), 41 U.S.C.A. §§ 601–613 (West 1987 & Supp.2004), "is a comprehensive statutory scheme for resolving contractual conflicts between the United States and government contractors." *United States v. J & E Salvage Co.,* 55 F.3d 985, 987 (4th Cir.1995). In general terms, the CDA applies to any "express or implied contract" entered into by an executive agency of the United States Government for the procurement of property, services, or construction. 41 U.S.C.A. § 602(a)(West 1987). District courts do not have subject-matter jurisdiction over claims falling within the scope of the CDA; a CDA claimant may seek relief only through appeals to the appropriate agency or by filing suit in the Court of Federal Claims. *See* 41 U.S.C.A. § 609(a)(1) (West Supp.2004); *J & E Salvage,* 55 F.3d at 987 ("[F]ederal district courts lack jurisdiction over government claims against contractors which are subject to the CDA.").

In this case, the United Kingdom Secretary of State for Defence, as represented by United Kingdom Ministry of Defence, Defence Procurement Agency (UK MOD) filed this breach-of-contract action in federal district court against Trimble Navigation Limited (Trimble). UK MOD alleged that it was a third-party beneficiary of certain procurement contracts between Trimble and the United States Government and that Trimble breached those contracts. The district court dismissed the action for lack of subject-matter jurisdiction, concluding that although UK MOD was not a party to the procurement contracts, its claims nonetheless fell within the scope of the CDA. UK MOD appeals.

As we explain below, we conclude that while the CDA applies to disputes involving procurement contracts, its reach is limited to claims by the Government against a contractor, or by a contractor against the Government. Therefore, although UK MOD's claims relate to a procurement contract, this particular action does not fall within the scope of the CDA. Accordingly, we reverse the decision of the district

court and remand for further proceedings.[1]

## I.

Sales of certain military goods and services to foreign governments are authorized by the Arms Export Control Act (AECA), 22 U.S.C.A. §§ 2751–2796d (West 2004). One of the ways that such a sale can be consummated is through a "procurement for cash sale": the foreign government pays the United States Government in advance, the United States Government enters into a contract with the supplier, and the supplier provides the goods to the foreign government. This case involves a dispute arising from just such a transaction.

The NAVSTAR GPS is a space-based, twenty-four satellite radio-navigation system designed and deployed by the United States Department of Defense (U.S. DoD) that provides users with worldwide, all-weather, three-dimensional positioning, velocity, and precise time data. *See* United States Navy, NAVSTAR GPS, *available at* http://www.chinfo.navy.mil/navpalib/policy/vision/vis02/ vpp02–ch3x.html (last visited May 9, 2005). The United Kingdom and fourteen other North Atlantic Treaty Organization nations entered into a "Memorandum of Understanding" that permits them to use the GPS system. The Memorandum of Understanding requires foreign governments to buy certain GPS-related equipment, including the auxiliary output chips at issue here, through the Foreign Military Sales Program and a "Letter of Offer and Acceptance."[2] The Memorandum of Understanding informs participating nations that "[t]he general conditions of the [Letter of Offer and Acceptance] will not be negotiable." J.A. 14.

In a July 1998 Letter of Offer and Acceptance, U.S. DoD agreed to "procure and furnish ... on a non-profit basis" for UK MOD more than 2,000 GPS-related "auxiliary output chips" manufactured by Trimble, an approved U.S. company, J.A. 39, and U.S. DoD entered into four contracts with Trimble (the U.S. DoD/Trimble contracts). The U.S. DoD/Trimble contracts were subject to the CDA, which by operation of law applies to every federal procurement contract. *See* 41 U.S.C.A. § 602(a)(1) ("[T]his chapter applies to any ... contract ... entered into by an executive agency ... for the procurement of property. . . .").

The first chips were delivered to UK MOD in early 2000. According to UK MOD, approximately ninety-five percent of the auxiliary output chips initially delivered by Trimble did not conform to the applicable military specifications or standards and were returned for repair or replacement. Trimble repaired or replaced the chips, but UK MOD found that twenty percent of the repaired or replaced chips were still defective. Problems with the chips persisted throughout 2000 and 2001. The problems caused delays in a UK MOD cruise missile program and led to significantly increased costs on the part of UK MOD.

---

**1.** Although the United States is not a defendant in this action, the issue in the case—the reach of the CDA—is one of great interest to the Government. We therefore invited the Government to file an amicus brief, and we permitted the parties an opportunity to respond to the Government's arguments.

**2.** The Foreign Military Sales Program, set forth in the Security Assistance Management Manual (SAMM), provides the policy governing the United States Government's sale of defense articles or services to foreign governments and prescribes the use and contents of a Letter of Offer and Acceptance for "the sale of defense articles and/or defense services." SAMM § C.4.1, *available at* http://www.dsca.osd.mil/samm/ (last visited May 9, 2005).

UK MOD looked to the United States for assistance in recovering its costs from Trimble. The United States Air Force investigated UK MOD's claim, including a review of the chronology of events and the burden of proof required to hold Trimble liable on various causes of action. In January 2003, U.S. DoD released the Air Force's legal opinion (concurred in by the Air Force's General Counsel) explaining that it could not recommend any action against Trimble. The Air Force's opinion stated that "[w]hile this may not be the answer that [UK MOD] wanted, please be assured of [the United States'] continued commitment that [the Defense Security Cooperation Agency] will fully monitor this issue to ensure quality Gondola Auxiliary Output Chips are delivered." J.A. 201.

UK MOD then brought this breach of contract action against Trimble in federal district court, asserting diversity jurisdiction under 28 U.S.C.A. § 1332(a)(4). UK MOD alleged that Trimble breached the U.S. DoD/Trimble contracts by manufacturing defective auxiliary output chips and that Trimble's breach harmed UK MOD, a third-party beneficiary of the U.S. DoD/Trimble contracts. Trimble moved to dismiss UK MOD's complaint. The district court granted Trimble's motion, finding that the Contract Disputes Act divested the court of subject-matter jurisdiction over the dispute.[3]

UK MOD appeals from the district court's order, arguing that, as a matter of law, the CDA does not apply to its claims

against Trimble. UK MOD contends the CDA applies only to disputes between the U.S. Government and its contractors and not to third-party beneficiary suits brought by a foreign government against a contractor such as Trimble.

## II.

District courts have subject-matter jurisdiction over controversies between "a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States," so long as the amount in controversy exceeds $75,000.[4] 28 U.S.C.A. § 1332(a)(4) (West 1993). Thus, the district court clearly has subject-matter jurisdiction over this case, unless the CDA applies so as to oust the court's jurisdiction. This jurisdictional question presents a legal issue that we review *de novo. See Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1034 (4th Cir.1994).

### A.

Subject to certain exceptions not relevant here, the CDA applies to "any express or implied contract ... entered into by an executive agency for ... the procurement of property." 41 U.S.C.A. § 602(a)(1). Because the U.S. DoD/Trimble contracts were entered into by an executive agency and involve the procurement of property, the contracts are subject to the CDA, a conclusion that no party disputes. There is likewise no dispute that UK MOD's claims against Trimble relate to the CDA-covered contracts—UK MOD

---

3. Trimble also moved to dismiss UK MOD's complaint for failure to state a claim upon which relief could be granted because UK MOD was not a third-party beneficiary of the U.S. DoD/Trimble contracts and for failure to join the United States as an indispensable party. The district court declined to address these grounds for dismissal because it found the issue of subject-matter jurisdiction dispositive.

4. Section 1603(a) defines a foreign state as including "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C.A. § 1603(a) (West 1994). No party has argued that UK MOD is not a political subdivision, agency, or instrumentality of the United Kingdom or that the amount in controversy is less than $75,000.

claims that Trimble breached the procurement contracts that the United States Government entered into to provide UK MOD with the auxiliary output chips it needed and that, as a third-party beneficiary of those contracts, UK MOD is entitled to bring this breach-of-contract action against Trimble. The question presented by this case, however, is whether a claim made by a third-party beneficiary that is related to a CDA-covered procurement contract must be resolved under the procedures established by the CDA. In our view, the language and framework of the CDA require us to answer that question in the negative. *See United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (explaining that traditional principles of statutory construction require us to "account for a statute's full text"); *Gracey v. Int'l Bhd. of Elec. Workers, Local Union No. 1340*, 868 F.2d 671, 675 (4th Cir.1989) ("A court must endeavor to see a statute whole, not to construe statutory sections or phrases in isolation.").

 Although the CDA applies to all procurement contracts, it is clear from the structure of the Act that its "comprehensive scheme" for resolving disputes applies *only* to claims by the Government against a contractor or by a contractor against the

Government. *J & E Salvage*, 55 F.3d at 987. Section 605 sets forth the steps to initiate a claim and provides only for the processing of "claims *by a contractor against the government* relating to a contract," and for the processing of "claims *by the government against a contractor* relating to a contract." 41 U.S.C.A. § 605(a) (West Supp.2004) (emphasis added).[5] There is no language in section 605 explaining how claims by someone other than the Government or a contractor can be processed under the CDA. Indeed, the CDA specifically limits the definition of a contractor to "a *party* to a Government contract other than the Government." 41 U.S.C.A. § 601(4) (West 1987) (emphasis added). That section 605(a) focuses so specifically on (and *only* on) claims between the Government and a contractor strongly suggests the CDA is applicable only to procurement-contract-related claims that are made by these two entities.

This reading of section 605 is bolstered by a review of other provisions of the CDA that establish additional procedures covering contract-related claims by the Government against a contractor or by a contractor against the Government. The CDA permits the Government to appeal a contracting officer's decision to the appropri-

5. In its entirety 41 U.S.C.A. § 605(a) reads as follows:

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contacting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contacting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The con-

tracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

ate Board of Contract Appeals. *See* 41 U.S.C.A. § 607(d) (West Supp.2004). The Government may then appeal any adverse board decision to the United States Court of Appeals for the Federal Circuit if the head of the government agency involved in the dispute determines that an appeal should be taken and the Attorney General approves of such action. *See* 41 U.S.C.A. § 607(g)(1)(B)(West 1987); *see also* 28 U.S.C.A. § 1295(a)(10) (West 1993) (giving the Court of Appeals for the Federal Circuit exclusive jurisdiction over final decision of agency board of contract appeals under CDA). As to the contractor, the CDA provides that he may appeal the contracting officer's decision either to the appropriate Board of Contract Appeals or to the Court of Federal Claims. *See* 41 U.S.C.A. § 606 (West 1987) ("Within ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, *the contractor* may appeal such decision to an agency board of contract appeals, as provided in section 607 of this title." (emphasis added)); *id.* § 609(a)(1) ("[I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, *a contractor* may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary." (emphasis added)).

Moreover, the Court of Federal Claims—the trial court authorized to hear CDA disputes—has no jurisdiction to return a judgment against a private party. *See* 28 U.S.C.A. § 1491(a)(1) (West Supp. 2004) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States...."); *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (noting that jurisdiction of Court of Claims "is confined to the rendition of money judgments in suits

brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court" (internal citations omitted)). To read the CDA as Trimble and the Government urge would thus be the end of UK MOD's claims, because such an interpretation would require UK MOD to proceed in a forum that lacks the authority to grant it any relief. We simply do not find the language of the CDA to be nearly broad enough to support the conclusion that Congress intended to deprive parties in any way connected to a federal procurement contract of legal rights and remedies that they would clearly be entitled to exercise but for their connection to the procurement contract. *See, e.g., Roedler v. Dep't of Energy,* 255 F.3d 1347, 1351 (Fed.Cir.2001) (recognizing that third-party beneficiaries of a government contract may assert claims in accordance with third-party beneficiary law and the federal common law governing government contracts, with no mention of the potential application of the CDA); *D & H Distrib. Co. v. United States,* 102 F.3d 542, 546 (Fed.Cir.1997) (recognizing subcontractor's third-party beneficiary claim against Government relating to payment clause of a federal procurement contract, again without mention of the CDA).

Other courts have reached similar conclusions about the reach of the CDA. For example, both the Sixth and the Ninth Circuit Court of Appeals have rejected the contention that the CDA governs a subcontractor's suit against a prime contractor to a federal procurement contract. The courts noted that the subcontractor's dispute was not against the Government and emphasized that the CDA did not divest district courts of jurisdiction over suits to which the United States was not a party. *See Performance Contracting, Inc.*

*v. Seaboard Sur. Co.*, 163 F.3d 366, 371 (6th Cir.1998) (finding "it . . . a well-established proposition that [under the CDA] a contracting officer has no jurisdiction to resolve disputes between a general contractor and a subcontractor" because such claims *"are not against the government "*); *NavCom Def. Elecs., Inc. v. Ball Corp.*, 92 F.3d 877, 879–81 (9th Cir.1996) (rejecting argument that subcontractor's claim against prime contractor should have been submitted to a contracting officer under the CDA, reasoning in part that subcontractor's claim was not against the Government); *see also United States v. Miller-Stauch Constr. Co.*, 904 F.Supp. 1209, 1212 (D.Kan.1995) (rejecting application of the CDA where subcontractor sued contractor under subcontract providing that the parties shall resolve disputes under the CDA; reasoning in part that "[b]y its own plain terms, the CDA encompasses only claims or disputes in which the government is a party and makes no provision for disputes or claims between contractors"); *Riley Elec. Co. v. Am. Dist. Tel. Co.*, 715 F.Supp. 813, 819 (W.D.Ky.1989) (finding CDA inapplicable to dispute between two contractors as the Act "makes no mention of claims between contractors; it speaks only of claims between a contractor and the government").

Therefore, because UK MOD's claims against Trimble are neither "claims *by a contractor against the government* " nor "claims *by the government against a contractor* relating to a contract," 41 U.S.C.A. § 605(a) (emphasis added), we believe that the CDA simply is not applicable to UK MOD's claims and does not divest the district court of subject-matter jurisdiction over this action.

## B.

The Government and Trimble, however, point out that the purpose of the CDA is to ensure that government contracts are interpreted consistently by specialized contracting officers and administrative and judicial forums. They insist that to view UK MOD's claims as beyond the reach of the CDA would be inconsistent with Congress's purpose in enacting the CDA. Because this argument elevates legislative history over clear and unambiguous statutory text in order to determine congressional intent, we cannot agree.

Courts indulge "a strong presumption that Congress expresses its intent through the language it chooses. Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir.2000) (citation and internal quotations marks omitted), *aff'd by Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Here, the words of the CDA are plain and unambiguous, and the Act's statutory scheme is coherent and consistent. Thus, our inquiry is at an end. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (citation and internal quotation marks and alteration omitted)).

Nonetheless, even if we were to stray beyond the clear statute to determine congressional intent, the CDA's legislative history only strengthens our plain language interpretation of the Act. Prior to the CDA's enactment, the system of dispute resolution for claims by or against the Government was a "restrictive and uncoordinated" combination of "contract provisions, agency regulations, judicial de-

cisions, and statutory coverage ... too expensive and time consuming," and without the "procedural safeguards and other elements of due process that should be the right of litigants." S. Rep No. 95–1118, at 2–4, *reprinted in* 1978 U.S.C.C.A.N. 5235, 5236–38. In enacting the CDA, Congress sought to provide "a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims" to "insure fair and equitable treatment *to contractors and government agencies.*" *Id.* at 1, 1978 U.S.C.C.A.N. at 5235 (emphasis added).

The legislative history thus suggests that the purpose of the CDA was to provide an efficient and fair remedial scheme in which to settle claims by or against the Government. There is no indication that Congress perceived any problem with the manner in which contract claims between non-governmental parties were being resolved or that Congress intended the CDA to have any applicability to such disputes.

Federal agencies, the Court of Federal Claims, and the Court of Appeals for the Federal Circuit, of course, have developed an expertise in resolving federal procurement contract claims by and against the Government. And while Congress when enacting the CDA recognized the workload and relative lack of expertise of the district courts, *see id.* at 10, 1978 U.S.C.C.A.N. at 5244, there simply is no statutory provision that would permit claims like those asserted by UK MOD to be brought under the CDA. A brief mention of congressional concern about district courts' lack of expertise over procurement-related claims cannot justify an expansion of the CDA beyond that permitted by the plain language and structure of the Act.

Indeed, the law generally applicable to government contract claims is the same as would be applied in any commercial breach of contract suit. *See Franconia Assocs. v. United States,* 536 U.S. 129, 141, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." (internal quotations marks omitted)); *United States v. Bankers Ins. Co.,* 245 F.3d 315, 321 (4th Cir.2001) ("It is well settled that, when the United States is a party to a contract, ordinary principles governing contracts and their interpretation remain applicable."). UK MOD contends that its claims against Trimble are subject to ordinary principles of contract law and neither the Government nor Trimble have demonstrated otherwise. The district court is certainly qualified to apply ordinary principles of contract law to resolve UK MOD's claims against Trimble.

Accordingly, we find nothing in the legislative history that is inconsistent with our conclusion that UK MOD's claims do not fall within the reach of the CDA.

### C.

Trimble and the Government also urge us to adopt the district court's reasoning below that because UK MOD's rights, as an alleged third-party beneficiary, are dependent on the terms of the U.S. DoD/Trimble contracts, the CDA divests the district court of jurisdiction over UK MOD's suit. That is, because UK MOD can only assert rights due the Government and the Government is bound by the procedures of the CDA, then UK MOD must also be bound. *See, e.g.,* Richard A. Lord, 13 *Williston on Contracts* § 37:23, at 149 (4th ed. 2000) ("More colloquially stated: It is clear that a third party beneficiary's right to enforce a contract cannot rise higher than the rights of the contracting party through whom he claims. This means that third party beneficiaries must

take their contracts as they find them—the good with the bad." (footnote and internal quotation marks omitted)).

We find this argument unavailing for the reasons previously stated. Congress, acting pursuant to its authority under the United States Constitution, creates federal subject matter jurisdiction by statute. *See, e.g.,* U.S. Const. Art. I, § 8, cl. 9 (vesting Congress with the power to "constitute Tribunals inferior to the supreme Court"); U.S. Const. Art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); 28 U.S.C.A. §§ 1330–1369 (West 1993 & Supp.2004) (providing for the jurisdiction of the district courts). While certainly the rules governing third-party beneficiaries will be important as this case progresses in the district court, we do not see in the language of the CDA an intent on the part of Congress to restrict jurisdiction beyond that which is explicit. The plain language and the enforcement mechanisms in the CDA tightly limit the parties whose coverage is contemplated and this restriction must be enforced as written.

## III.

Finally, Trimble argues that, in the event the court finds that the district court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, the court may affirm the district court's decision to dismiss UK MOD's suit based on the alternative ground that UK MOD is not a third-party beneficiary of the U.S. DoD/Trimble contracts. We decline to reach this issue on appeal. While there is some dispute as to the appropriate test to be applied, both parties agree upon the first prong of the third-party beneficiary test—that is, "the contract must reflect the intent to benefit the third-party." *Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). "[W]hen determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation." *Beverly v. Macy,* 702 F.2d 931, 940 (11th Cir.1983); *accord* Richard A. Lord, 13 *Williston on Contracts* § 37:8 (4th ed.2000). A determination of the parties' intent, based upon both the relevant contract and the circumstances surrounding the contract, involves a fact-sensitive inquiry that is most prudently considered in the first instance by the district court.[6]

## IV.

For the reasons discussed above, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

**6.** We note, in particular, that the issues raised by the Government in its brief related to the United States' deliberate retention of control over the sale of sensitive U.S. military defense articles, such as the auxiliary output chips, to the United Kingdom through the Foreign Military Sales Program may be relevant to the merits of UK MOD's alleged third-party beneficiary action against Trimble. Thus, we simply conclude that the district court has subject-matter jurisdiction over this suit. We express no opinion on the ultimate viability of UK MOD's contract claims.