TRAXLER, Circuit Judge,
dissenting:
In the first appeal of this case, we declined to reach the issue of UK MOD’s status as a third-party beneficiary to the contracts between Trimble Navigation Limited and the United States Air Force. See United Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165, 173 (4th Cir.2005) (“Trimble I”). We remanded for further proceedings on this issue, including a determination of “whether the parties to the contract intended to bestow a benefit on a third party.” Id. (internal quotation marks omitted). We noted that this “fact-sensitive inquiry” should be “based upon both the relevant contract and the circumstances surrounding the contract.” Id.
On remand, the district court dismissed UK MOD’s complaint under Rule 12(b)(6), concluding, based on the contract documents, that “there are no material facts in dispute” and “the record does not support the conclusion that the United States and UK MOD intended that UK MOD would be directly benefitted by the contract between the United States and Trimble.” J.A. 260.*
Thus, we address the issues raised in this appeal in the procedural context of Trimble’s motion to dismiss under Rule 12(b)(6). A party moving to dismiss a complaint under Rule 12(b)(6) is “testing] the sufficiency of [the] complaint” and asserting, in effect, “that the plaintiff [is not] entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.” Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir.1999) *710 (internal quotation marks omitted). The court should grant a Rule 12(b)(6) motion only “if, after accepting all well-pleaded allegations in the plaintiffs complaint as true and drawing all reasonable factual inferences from those facts in the plaintiffs favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.” Id. at 244. Rule 12(b)(6), therefore, limits the court’s inquiry; it is not a vehicle for the court to assess the record or “resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.” Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1993).
With these principles in mind, I would hold that the allegations in UK MOD’S complaint are sufficient at this point to state a claim and survive the motion to dismiss. First, I do not believe Congress, in enacting the Arms Export Control Act (“AECA”), see 22 U.S.C. §§ 2751-2799aa-2, precluded third-party beneficiary rights in this context. Second, UK MOD’S complaint states a third-party beneficiary claim under the favorable pleading standards applicable at this procedural juncture. I would therefore reverse the decision of the district court and remand for further proceedings.
I.
Trimble contends that the structure of the AECA, as well as the general purpose of the AECA, preclude a disappointed foreign government purchaser in a Foreign Military Sales (“FMS”) transaction from seeking redress as a third-party beneficiary. An FMS transaction under the AECA involves the sale of military defense items by the United States to a foreign country in a government-to-government transaction; the items to be sold are either procured by the United States or sold directly from the stocks of the United States Department of Defense. See 22 U.S.C. §§ 2761 (“Sales from stocks”), 2762 (“Procurement for cash sales”). A “procurement for cash sales” arrangement under § 2762 involves two separate contracts — a procurement contract between the United States and the defense contractor and the sales agreement between the United States and the foreign government. See 22 U.S.C. § 2762(a); Trimble I, 422 F.3d at 167. In addition to these statutorily prescribed methods, a foreign government may also purchase defense articles directly from the manufacturer in a Direct Commercial Sale (“DCS”). The President, however, has discretion “to designate which military end-items must be sold through FMS channels exclusively.” Security Assistance Management Manual (SAMM) § C4.5.9, available at http://www. dsca.osd.mil/samm/ (last visited May 1, 2007); see 22 U.S.C. § 2778. In this case, because the Department of Defense does not maintain a stock of Trimble’s Auxiliary Output Chips (“AOCs”), UK MOD and the United States entered into a Letter of Acceptance under which the United States agreed specifically to procure Trimble AOCs on behalf of UK MOD “through a contract between the United States Air Force and Trimble.” J.A. 12.
Trimble contends that where procurement is required to fulfill the terms of a Letter of Agreement, as is the case here, the “back-to-back” contract structure necessarily precludes the third-party beneficiary theory being asserted by UK MOD— the foreign government does not have a direct contractual relationship with the private manufacturer and therefore must pursue whatever remedies are available under its agreement with the United States government. In other words, Trimble suggests that UK MOD is attempting to invoke a remedy that is available only in a DCS transaction.
*711 In my view, the statutory provisions relied upon by Trimble do not indicate one way or another whether UK MOD can claim third-party beneficiary status. The mere fact that a procurement for cash transaction does not involve a direct contractual relationship between the foreign purchaser and the defense contractor does not dictate that UK MOD’s claim is statutorily barred. Indeed, any third-party beneficiary claim assumes the plaintiff does not have a direct contractual relationship with the defendant. Thus, allowing UK MOD to proceed on its theory would not afford it a remedy available only in a DCS transaction, ie., a direct contractual claim. Trimble has not pointed to any provision of the AECA or any regulation issued thereunder indicating that UK MOD’s remedies are circumscribed in the manner suggested.
Trimble also asserts that the authority of the United States government to exert control over many aspects of the sale of an FMS item under the AECA — including, most significantly, the power to terminate the sale completely — precludes third-party rights. Again, the provisions cited by Trimble simply do not bear upon what recourse UK MOD may seek in an FMS transaction. Moreover, because the government’s power to terminate applies to DCS transactions as well as FMS transactions, I fail to discern how the authority to terminate affects third-party beneficiary rights either way. See Defense Institute of Security Assistance Management, Online Green Book: The Management of Security Assistance 15-13, http://www.disam. dsca.mil/ pubs/DR/greenbook.htm.
To the extent that Trimble cites and relies upon the general statutory purpose of the AECA, I do not find such broad language particularly instructive. The AECA contains a very broad policy statement that, in view of “[t]he need for international defense cooperation among the United States and those friendly countries to which it is allied” and the fact that the effectiveness of such cooperation “is directly related to the ... compatibility of their defense equipment,” the United States Government is authorized to sell defense articles to allies to “further the objective of applying agreed resources of each country ... to achieve specific national defense requirements and objectives of mutual concern.” 22 U.S.C. § 2751. If anything, the language suggests that the AECA is aimed at facilitating rather than restricting the sale of defense items to foreign governments. Theoretically, the availability of third-party beneficiary claims would be consistent with such a policy.
II.
Having concluded that the AECA does not preclude a third-party beneficiary claim by UK MOD, I would hold that UK MOD’s complaint sets forth sufficient facts to survive a motion to dismiss under Rule 12(b)(6). “In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly.” See Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1259 (Fed.Cir.2005) (internal quotation marks omitted). Although the beneficiary “must fall within a class clearly intended to be benefitted” by the contract, “the intended beneficiary need not be specifically or individually identified in the contract.” Id. at 1260 (internal quotation marks and alteration omitted). The court, “[wjhen determining whether the parties to the contract intended to bestow a benefit on a third party, ... may look beyond the contract to the circumstances surrounding its formation.” Trimble I, 422 F.3d at 173 (internal quotation marks omitted). The *712 complaint asserted that the “AOCs purchased by UK MOD ... were manufactured by Trimble pursuant to four contracts that had been awarded to Trimble by the U.S. Air Force on behalf of UK MOD.” J.A. 12. As alleged by UK MOD, each of the contracts between the Air Force and Trimble specifically referenced the FMS case number assigned to the agreement between the United States and UK MOD for the purchase of Trimble AOCs. Additionally, the Trimble procurement contracts “stated that the Trimble AOCs were to be delivered to UK MOD.” J.A. 13. Moreover, in response to the district court’s inquiry at oral argument regarding any additional facts relevant to the intent of the parties, UK MOD explained that “the evidence when developed during the course of discovery will show not only [that] Trimble was fully aware that ... the United Kingdom was the intended beneficiary of these contracts but that Trimble actually went after this business with the UK. They met with the UK. They were competing with another contractor. [Trimble] shared specifications with the UK, and ... the UK specifically identified Trimble as opposed to the other contractor in the LOA” and indicated to the United States its preference for Trim-ble AOCs. J.A. 224.
Dismissal at this point, prior to discovery, is premature in my opinion. UK MOD has alleged sufficient facts to state a claim and continue pursuing its action through the discovery process. Therefore, I respectfully dissent.

 Because UK MOD’s intent is not relevant to its status as a third-party beneficiary to a contract between the Air Force and Trimble, the district court in all probability meant that "the record does not support the conclusion that the United States and Trimble intended that UK MOD would be” a third-party beneficiary to “the contract between the United States and Trimble.”